Linda MARKERT, Appellant,

v.

Randy BEHM, Appellant,

and

Alan Markert, Respondent.

No. C6–86–923.

Court of Appeals of Minnesota.

Oct. 14, 1986.

John D. Jeffrey, Massee, Leonard & Lindquist, East Grand Forks, for Linda Markert.

Kevin B. Spaeth, Spaeth & Schubert, Grand Forks, N.D., for Alan Markert.

Heard, considered and decided by PARKER, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

PARKER, Judge.

This appeal is taken from the trial court's dismissal of appellants' action challenging the paternity of respondent, who is the presumptive father of the child in question and who was also adjudicated the child's father in a prior divorce proceeding. The trial court held that the doctrines of collateral estoppel, equitable estoppel, and res judicata barred appellant mother from challenging the previous adjudication of paternity, and that appellant putative father lacked standing to bring a paternity action. We affirm.

### FACTS

Linda and Alan Markert were married on November 17, 1979. Their daughter, Natalie, was born on October 12, 1983. On

August 22, 1984, Linda commenced a divorce action against Alan.

Linda alleged in her petition for divorce, and verified under oath, that Alan was Natalie's father. In a sworn affidavit accompanying Linda's motion for temporary relief, she again asserted that Natalie was Alan's daughter. In November she signed a stipulation acknowledging that Alan was Natalie's father, providing that Linda should have custody of Natalie subject to Alan's visitation rights, and requiring Alan to pay child support for Natalie's care and maintenance. The final divorce hearing was held on December 20, 1984, and Linda again testified under oath that Natalie was born of Linda's marriage to Alan. The court then entered a final decree of divorce declaring Natalie to be the child of Linda and Alan Markert.

In August 1985 Linda began a paternity suit, seeking a declaration that Natalie's father was Randy Behm, not Alan Markert. She also moved for an order compelling all of the parties to submit to blood tests for the purpose of determining the identity of Natalie's father.

At a hearing on August 26, 1985, Alan and Behm both claimed to be Natalie's father. Linda alleged that she and Alan had not had sexual relations during the time of conception and that Behm was the child's father. The trial court took the case under advisement. In September 1985 Linda requested the addition of Natalie as a co-plaintiff, to be represented by a court-appointed guardian ad litem. On the same date, Behm joined in Linda's motion to compel blood tests and also instituted a cross-claim against Alan, alleging that Behm was Natalie's natural father and that he had received her into his home and openly held her out as his child.

On March 3, 1986, the trial court held that Linda was estopped from bringing a paternity action because of the previous divorce decree. The court also dismissed *sua sponte* Behm's claim, holding that he lacked standing to bring a paternity action under Minn.Stat. § 257.57, subd. 1 (1984). The trial court did not rule on Linda's motion to appoint a guardian ad litem for Natalie and to include Natalie as a co-plaintiff. Linda Markert and Randy Behm appeal.

## ISSUES

1. Did the trial court err in holding that Linda Markert is estopped from bringing an action challenging Alan Markert's paternity of Natalie?

2. Did the trial court err in failing to grant Linda Markert's motion to add Natalie as a co-plaintiff in Linda's paternity action and to appoint a guardian ad litem for her?

3. Did the trial court err in holding that Randy Behm lacked standing to bring a paternity action under Minn.Stat. § 257.57, subd. 1?

4. Does Minn.Stat. § 257.57, subd. 1, denying certain putative fathers standing to bring paternity actions, violate the due process or equal protection clauses of the fourteenth amendment to the United States Constitution?

## DISCUSSION

### I

Although Linda Markert's ability to bring this action is not addressed in appellants' statement of the case or brief, she is named as an appellant. For the reasons outlined below, we find that the doctrines of collateral estoppel, equitable estoppel, and res judicata all bar Linda from challenging Alan's paternity of Natalie.

Collateral estoppel is appropriate where:

(1) the issue is identical to one in a prior adjudication;

(2) there was a final judgment on the merits;

(3) the estopped party was a party or in privity with a party to the prior adjudication; and

(4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Cook v. Connolly,* 366 N.W.2d 287, 290 n. 2 (Minn.1985) (quoting *Ellis v. Minneapolis Commission on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982)).

▆ In this case the issue of paternity has been decided in a prior adjudication; the final decree of divorce between Linda and Alan Markert provided that Alan was Natalie's father. In addition, a divorce decree constitutes a final judgment on the merits for the purposes of res judicata and collateral estoppel. *See Ruprecht v. Ruprecht,* 255 Minn. 80, 90, 96 N.W.2d 14, 22 (1959). Finally, Linda Markert was a party to the divorce decree, and she was given a full and fair opportunity to be heard on the issue of Natalie's paternity. In fact, the finding that Alan is Natalie's father was undoubtedly based in large part on Linda's own testimony to that effect. Now that Linda has succeeded in having Alan named as Natalie's father for the purpose of collecting child support, she challenges his paternity, in direct contradiction to her own prior testimony. Clearly, Linda would be both collaterally and equitably estopped from challenging this adjudication because it was based on her own testimony.

This court has previously held that a final divorce decree determining paternity is res judicata as to that issue. In *State ex. rel. Ondracek v. Blohm,* 363 N.W.2d 113 (Minn.Ct.App.1985), this court held "that paternity was clearly placed in issue by the pleadings in the dissolution action and that the finding of fact that the children are the minor children of respondent is res judicata and bars further litigation of the issue in the paternity action." *Id.* at 114. That holding was recently followed in *State ex. rel. Mart v. Mart,* 380 N.W.2d 604, 606 (Minn.Ct.App.1986). We conclude that the doctrines of collateral and equitable estoppel and res judicata bar Linda from relitigating Alan's status as Natalie's father.

## II

▆ Appellants also seek to have Natalie added as a co-plaintiff in this action. This motion appears to be nothing more than a thinly disguised attempt to bolster appellants' case by using the child as a party. If Natalie were placed in such a position by appellants, she would share their interests and therefore would be in privity with them. Natalie's action would then be collaterally estopped by the previous divorce decree. As stated above, collateral estoppel bars relitigation of the same issues by those in privity with the original parties as well as by the original parties themselves. *See* Pielemeier, *Due Process Limitations on the Application of Collateral Estoppel Against Nonparties to Prior Litigation,* 63 B.U.L.Rev. 383, 387–95 (1983). Therefore, the trial court did not err in failing to grant appellants' motion to add Natalie as a co-plaintiff.

Appellants also appeal the trial court's failure to grant their motion to appoint a guardian ad litem. Because the trial court did not rule on that motion, this court need not address the matter.

## III

▆ Minn.Stat. §§ 257.55 and 257.57 (1984) are derived from §§ 4 and 6 of the Uniform Parentage Act, which has been adopted by 16 jurisdictions. Section 257.57, subd. 1, confers standing to bring a paternity action only upon a limited number of persons. Only "[a] child, his natural mother, or a man presumed to be his father under section 257.55, subdivision 1, clause (a), (b), or (c) may bring an action." *Id.* Appellant Behm does not fall under any of these categories, and therefore he does not have standing under the statute.

Before addressing the constitutionality of § 257.57, subd. 1, we note that the statute does not deny standing to all putative fathers. Behm could have obtained standing under the statute quite easily. Section 257.57, subd. 1, grants standing to men who are presumptive fathers under § 257.-55, subd. 1(c), among others. That subdivision provides:

A man is presumed to be the natural father of a child if:

\*     \*     \*     \*     \*     \*

(c) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared void, voidable, or otherwise invalid, and,

(1) he has acknowledged his paternity of the child in writing filed with the state registrar of vital statistics;

(2) with his consent, he is named as the child's father on the child's birth certificate; or

(3) he is obligated to support the child under a written voluntary promise or by court order;

\* \* \* \* \* \*

*Id.*

There is no reason why Behm could not gain standing under the statute by marrying Linda Markert, acknowledging his paternity of Natalie, and voluntarily promising in writing to support Natalie. Of course, these procedures would only give Behm standing to bring a paternity action; he would not succeed on the merits of his paternity action unless he could rebut Alan Markert's presumption of paternity under Minn.Stat. § 257.55, subd. 1(a).

### IV

■ Behm contends that Minn.Stat. § 257.57, subd. 1, violates the due process and equal protection clauses of the fourteenth amendment to the United States Constitution by denying him standing to bring a paternity action. It is unclear whether Behm challenges the prima facie constitutionality of the statute or the constitutionality of the statute as applied to him. In order to challenge the prima facie constitutionality of a Minnesota statute, one must first notify the Attorney General. Minn.R.Civ.App. 144. Because there was no such notice in this case, only the constitutionality of the statute as applied need be addressed.

Behm claims that his right to be declared Natalie's father is a liberty interest protected by the due process clause of the four-

teenth amendment to the United States Constitution. In support of this argument, Behm cites *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In *Stanley* the plaintiff challenged an Illinois statute under which illegitimate children were automatically declared dependents of the State upon the death of their mother, without any determination as to the father's parental fitness. The Supreme Court held that due process entitled such fathers to a hearing on their fitness as a parent before their children could be taken away. The court stated that the fathers' interest was "at the least, cognizable and substantial," and that it was protected under the fourteenth amendment. *Id.* at 651–52, 92 S.Ct. at 1212–13.

*Stanley* has been the basis of numerous challenges to similar statutes based on § 6 of the Uniform Parentage Act in other jurisdictions. These cases have almost uniformly held that *Stanley* did not grant a protected liberty interest to putative fathers such as Behm. *See, e.g., Petitioner F. v. Respondent R.,* 430 A.2d 1075, 1078–79 (Del.1981) ("It does not follow from *Stanley* \* \* \* and the Supreme Court has not held in our view, that a man claiming paternity has a constitutionally protected interest in a determination of his parental status \* \* \* with respect to a child conceived and born during the marriage and cohabitation of the child's mother to and with another who has not disavowed the child's legitimacy."); *P.B.C. v. D.H.,* 396 Mass. 68, 72, 483 N.E.2d 1094, 1097 (1985) ("*Stanley v. Illinois* \* \* \* does not require, that, in all circumstances, a man claiming to be the father of a child conceived while the child's mother is married to another man is constitutionally entitled to be heard on the question of paternity."), *cert. denied,* —— U.S. ——, 106 S.Ct. 1286, 89 L.Ed.2d 593 (1986).

■ We agree with these courts that a putative father's interest in asserting his paternity is not a protected liberty interest under *Stanley.* Even if such an interest were protected under the due process clause, Behm would not automatically be

granted standing. Even in *Stanley*, the Supreme Court held that "due process of law does not require a hearing in every conceivable case of government impairment of private interest." *Stanley*, 405 U.S. at 651, 92 S.Ct. at 1212. As pointed out by the Wyoming Supreme Court, "assuming arguendo that [the putative father] had a constitutionally cognizable interest, competing private and state interests would have to be weighed to determine whether a hearing were necessary to afford due process of the law." *A v. X, Y, and Z*, 641 P.2d 1222, 1227 (Wyo.1982), *cert. denied,* 459 U.S. 1021, 103 S.Ct. 388, 74 L.Ed.2d 518 (1982).

■ Courts which have undertaken this due process balancing test have held without exception that the interest of protecting children from potentially harmful paternity suits outweighs the putative father's interest in establishing his paternity. *See, e.g., Petitioner F.*, 430 A.2d at 1079 ("even assuming arguendo that the putative father has a constitutionally cognizable interest, that interest would be outweighed by the competing public interest and public policy in this case, and he must be denied judicial access"); *P.B.C.*, 396 Mass. at 73, 483 N.E.2d at 1097 ("[D]enying the [putative father] a right to litigate his paternity * * * does not violate [his] right to due process."); *A v. X, Y, and Z*, 641 P.2d at 1227 ("The government function in this case * * * far outweighs the private interest of [the putative father]"). *See also Michelle W. v. Ronald W.*, 39 Cal.3d 354, 360, 216 Cal.Rptr. 748, 751, 703 P.2d 88, 92 (1985), *appeal dismissed sub. nom. Michelle Marie W. v. Riley,* — U.S. —, 106 S.Ct. 774, 88 L.Ed.2d 754 (1986); *Happel v. Mecklenburger*, 101 Ill.App.3d 107, 117–18, 56 Ill.Dec. 569, 578, 427 N.E.2d 974, 983 (Ill.Ct.App.1981). We agree with these courts that the child's interests are best served by barring such paternity actions and that those interests outweigh the putative father's interest in establishing his paternity.

Behm also contends that by denying certain putative fathers standing to prove their paternity, § 257.57, subd. 1, violates the equal protection clause of the fourteenth amendment to the United States Constitution. He argues that the statute, as applied, discriminates on the basis of gender in allowing paternity suits to be brought by a child's mother, but not by a putative father.

■ Behm's assertion that the classifications in Minn.Stat. § 257.57, subd. 1, are gender-based is incorrect. *See P.B.C.,* 396 Mass. at 74, 483 N.E.2d at 1098 ("[T]hose constitutional principles [the equal protection clause and Massachusetts' Equal Rights Amendment] do not apply in this case because the described classifications are not gender-based"). Certain men, such as a child's presumptive father, are granted standing to bring paternity actions under the statute. As discussed above, Behm himself could have obtained standing had he complied with the requirements of § 257.55, subd. 1(c). Similarly, the statute may deny standing to certain women. Only a woman who is the child's natural mother has standing under § 257.57, subd. 1; this restriction is especially significant in light of the advent of in vitro fertilization, surrogate motherhood, and other scientific advances which may make the natural mother's identity unclear.

■ Even if § 257.57, subd. 1, were considered gender-based, the classification involved would be justified in view of the compelling public policy concerns of protecting the minor child from the "permanent stigma and distress which would undoubtedly result" if putative fathers such as Behm were granted standing. *See Petitioner F.*, 430 A.2d at 1080. For this reason, the equal protection argument advanced by Behm has already been rejected in many jurisdictions. *See, e.g., Michelle W.,* 39 Cal.3d 365, 216 Cal.Rptr. at 755, 703 P.2d at 94–95 ("[W]e fail to find that the statutory scheme, as interpreted by the courts and as applied to plaintiffs' case, violates the guarantee of equal protection of the laws."); *Vincent B. v. Joan R.,* 126 Cal.App.3d 619, 627, 179 Cal.Rptr. 9, 13 (Cal.Ct.App.1982) ("[t]here is likewise no

merit to appellant's equal protection argument"), *appeal dismissed,* 459 U.S. 807, 103 S.Ct. 31, 74 L.Ed.2d 45 (1982); *Happel,* 101 Ill.App.3d at 115–18, 56 Ill.Dec. 569, 578, 427 N.E.2d at 981–83 ("Such difference in treatment is not a violation of equal protection principles"); *A v. X, Y, and Z,* 641 P.2d at 1224–26 ("If the classification can be said to be gender based * * * it is not invidious but only realistically reflects the fact that sexes are not similarly situated in these circumstances. * * * And, it is proper under any of the standards applied to it").

It is a well-recognized rule of statutory construction in Minnesota that statutes are presumptively constitutional. *See, e.g., State v. Target Stores, Inc.,* 279 Minn. 447, 156 N.W.2d 908 (1968). Appellants in this case have not presented any arguments which compel this court to disregard that presumption.

## DECISION

The trial court did not err in holding that Linda Markert was barred from challenging Alan Markert's paternity of Natalie Markert by the doctrines of collateral estoppel, equitable estoppel and res judicata. Nor did the trial court err in failing to grant appellants' motion to add Natalie as a co-plaintiff in appellants' paternity action or to appoint a guardian ad litem for her.

As the trial court held, appellant Behm does not have standing under Minn.Stat. § 257.57, subd. 1, to bring a paternity action. By denying such standing to putative fathers such as Behm, § 257.57, subd. 1, does not violate the due process or equal protection clauses of the fourteenth amendment to the United States Constitution.

Affirmed.