IN THE MATTER OF J.S.V.

Norfolk. March 9, 1988. — June 13, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Paternity. Legitimacy. Evidence,* Paternity, Legitimacy, Presumptions. *Due Process of Law,* Paternity. *Adoption,* Dispensing with parent's consent, Standing.

A putative father has no right to a hearing on the issue of his paternity in the context of a proceeding under G. L. c. 210, § 3, to dispense with the need for parental consent for the adoption of a minor child, where the child concerned was conceived and born of a married woman. [573-575]

PETITION filed in the Probate and Family Court Department on July 22, 1986.

A motion to strike the putative father as a party for lack of standing was heard by *Edward W. Farrell,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William C. McPhee* for Joseph S. Perry.

*Countess C. Williams,* Assistant Attorney General, for Department of Social Services.

*Amy H. Donovan* for the minor.

LIACOS, J. This appeal concerns whether a putative father may adjudicate the issue of his paternity in a proceeding under G. L. c. 210, § 3 (1986 ed.), where the child concerned was conceived and born of a married woman. We conclude that a putative father has no right to a hearing on the issue of paternity in the context of a c. 210, § 3, proceeding.

On July 22, 1986, the Department of Social Services filed a petition pursuant to c. 210, § 3, to dispense with the need for parental consent for the adoption of a minor child, J.S.V. The appellant, the putative father, filed a pro se appearance on August 26, 1986. He objected to allowance of the petition

and alleged that he was the biological father of J.S.V.[1] The judge appointed an attorney to represent him.

On March 10, 1987, the child's attorney moved to strike the putative father as a party for lack of standing. After a hearing in which the appellant was allowed to make an offer of proof, the probate judge allowed the motion. On March 16, 1987, the judge issued a judgment pursuant to § 3, dispensing with consent for J.S.V.'s adoption. The putative father appealed from the allowance of the motion striking his appearance. We transferred the case to this court on our own motion.

In relevant part, the Probate Court judge found as follows. In 1970, the child's mother began living with the presumed father (husband). They were married in 1974. The mother was later convicted of manslaughter. While serving her sentence for manslaughter at the Massachusetts Correctional Institution (MCI), Framingham, the mother gave birth to J.S.V. on June 14, 1978. During the mother's incarceration, the child lived with an aunt. The mother was released from prison in December, 1978. By this time, she had given birth to two of her three children, of whom J.S.V. is the middle child. For several months, J.S.V. and the older sibling lived with the mother and the husband. In early 1979 the couple separated. The husband continued to support J.S.V. and the older sibling. The husband never denied his paternity of J.S.V. In the fall of 1979, the mother and her children, together with the appellant, moved to New Hampshire. On February 19, 1980, the appellant killed the husband. The appellant currently is serving a life sentence for murder at MCI, Bridgewater.

The rest of the judge's findings cover the period from 1980 to 1986, and deal with the questions of the mother's fitness as a parent and the best interests of her three children, including J.S.V. It suffices to state that the judge found the mother unfit, partly on the basis of a long history of her severe physical, emotional, and sexual abuse of J.S.V. and the other two siblings. The judge allowed the petition to dispense with consent

---

[1] The child's mother initially objected to the petition but later withdrew her objection.

pursuant to G. L. c. 210, § 3.[2] We consider only whether the judge correctly allowed the motion to strike the appellant as a party who had standing to be heard on the c. 210, § 3, petition.

In *P.B.C.* v. *D.H.*, 396 Mass. 68, 71 (1985), cert. denied, 475 U.S. 1058 (1986), this court extended the scope of the common law presumption of legitimacy to include a child conceived by a married woman. Thus, there is a strong presumption that a child born to, or conceived by, a married woman is the child of the woman's husband. *Id. Commonwealth* v. *Leary*, 345 Mass. 59, 60 (1962). The presumption flows from the strong public policy interest in affording legitimacy to children. *P.B.C.* v. *D.H.*, *supra* at 73. *R.R.K.* v. *S.G.P.*, 400 Mass. 12, 16 (1987) (Liacos, J., concurring).

The "presumption of legitimacy may not be rebutted, even in a civil case, 'except on facts which prove, beyond all reasonable doubt, that the husband could not have been the father.'" *Id.* at 17, quoting *Phillips* v. *Allen*, 2 Allen 453, 454 (1861). Thus, it must be shown, "beyond all reasonable doubt," either that: (1) the husband had no access to the wife during the time of possible conception; (2) the husband was impotent; or (3) a properly conducted blood grouping test, administered by a qualified expert, definitively excludes the husband as a father. *R.R.K.* v. *S.G.P.*, *supra* at 17 (Liacos, J., concurring), and cases cited. Proof of the wife's adultery, by itself, is insufficient to rebut the presumption of legitimacy. *Id. Sayles* v. *Sayles*, 323 Mass. 66, 69 (1948).

When the presumption of legitimacy arises, a man other than the husband (the presumed father) has no constitutional or common law right, in all circumstances, to be heard on the question of paternity.[3] *P.B.C.* v. *D.H.*, *supra* at 72-73. A

---

[2] The appellant does not dispute that the judge's findings were supported by clear and convincing evidence. See *Santosky* v. *Kramer*, 455 U.S. 745, 747-748 (1982).

[3] "We continue to recognize, as we did in *Normand* v. *Barkei*, [385 Mass. 851, 853 (1982)], that ordinarily an unwed father has a legally protectable interest in his children, and that he is entitled to establish that he is their natural father." *P.B.C.* v. *D.H.*, *supra* at 72. In *Normand* we held that a man who asserts that he is the biological father of a child may avail himself of the equity powers of a Probate Court under G. L. c. 215, § 6 (1986 ed.), to

proceeding under G. L. c. 210, § 3, is not the type of proceeding in which a person claiming to be the father of a child conceived or born during wedlock can seek to establish his paternity.[4]

Normally, when a putative father initiates a complaint to adjudicate paternity, he must allege some set of facts that would suffice to overcome the presumption of legitimacy. *R.R.K.* v. *S.G.P., supra* at 13. See *id.* at 18 (Liacos, J., concurring).[5] The offer of proof contained no such facts. Additionally, a hearing pursuant to c. 210, § 3, is an inappropriate proceeding in which to adjudicate a putative father's claim of paternity. The proper focus in a hearing to dispense with consent is whether the parents are presently fit to further the child's welfare and best interests. *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 389 Mass. 793, 799 (1983), and cases cited. There is no discernable due process violation in limiting a § 3 proceeding to its proper focus. See *Quilloin* v. *Walcott,* 434 U.S. 246, 254-255 (1978) (no due process problem in application of "best interests of the child" standard in adoption proceeding, where appellant was denied standing because he lacked a grant of legitimation).

---

protect his parental interest, if he is "acknowledged to be the father of an illegitimate child." *Id.* at 851. See *Symonds* v. *Symonds,* 385 Mass. 540 (1982). See also G. L. c. 273, § 15 (1986 ed.).

[4] General Laws c. 210, § 3 (*b*), requires that notice of the petition "to dispense with the need for consent [be given to] any person named in section two." General Laws c. 210, § 2 (1986 ed.), requires written consent of the "lawful parents." The appellant clearly does not fall within this category.

[5] It should be noted that G. L. c. 209C, § 5 (*a*) (1986 ed.), took effect on July 22, 1986, before the appellant intervened in this case. This statute denies standing to an unwed, putative father seeking to establish his paternity or visitation rights with regard to a child born while the mother was married to another man. The Probate Court judge apparently did not consider this provision in striking the appellant's appearance.

Given our holdings under prior case law and our reading of c. 210, § 3, it is unnecessary to consider this statute. We make no comment on its constitutionality. We do note, however, that the United States Supreme Court has noted probable jurisdiction in a case involving similar issues. See *Michael H.* v. *Gerald D.,* 191 Cal. App. 3d 995 (1987) (interest of putative father in establishing his paternity of child conclusively presumed legitimate outweighed by State interest in upholding family integrity), prob. juris. noted,        U.S.        (1988) (108 S. Ct. 1072 [1988]).

We have recognized, as to an acknowledged or undisputed father of an illegitimate child, that c. 210, § 4A (1986 ed.), "contemplates that a father's rights can be adjudicated in a proceeding under § 3," whenever the mother of a child born out of wedlock has surrendered the child in accordance with G. L. c. 210, § 2. *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 391 Mass. 113, 116 (1984). See *id.* at 114 n.1, and cases cited. Section 4A is not applicable to the facts of this case, and, thus, the appellant had no right to an initial determination of paternity in a § 3 proceeding. As a matter of due process, an unmarried, putative father has no absolute due process right to notice, and opportunity to be heard, before the child may be adopted. *Lehr* v. *Robertson,* 463 U.S. 248, 249-250 (1983).[6]

The order striking the appellant's appearance at the hearing to dispense with consent is affirmed. The judgment entered allowing the petition under G. L. c. 210, § 3, is affirmed.

*So ordered.*

---

[6] It should be reiterated that "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood . . . his interest in personal contact with his child acquires substantial protection under the Due Process Clause. . . . But the mere existence of a biological link does not merit equivalent constitutional protection." *Lehr* v. *Robertson, supra* at 261. See *Stanley* v. *Illinois,* 405 U.S. 645 (1972) (automatically destroying existing custodial relationship between father and his acknowledged illegitimate offspring is due process violation).