# ADOPTION OF PEARL & another.[1]

No. 92-P-663.

Hampden. November 18, 1992. - April 5, 1993.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Adoption*, Dispensing with parent's consent. *Parent and Child*, Dispensing with parent's consent to adoption. *Due Process of Law*, Notice. *Practice, Civil*, Judicial discretion.

In a proceeding under G. L. c. 210, § 3, to dispense with parental consent to the adoption of two minor children, the judge abused her discretion in denying the motion of the children's biological father to file a late objection to the petition under § 3, where the father's confusion as to who was to file the objection was a case of excusable neglect which, in context, was innocuous because unlikely to introduce complexity or delay in the proceedings. [310-314]

PETITION filed in the Hampden Division of the Probate and Family Court Department on June 24, 1991.

A motion to intervene and object to the petition was heard by *Marie E. Lyons*, J.

*Donald P. Whitney* for the father.

*Virginia A. Peel* for Department of Social Services.

GREENBERG, J. A probate judge barred the attempt of the biological father to file a late objection to a petition pursuant to G. L. c. 210, § 3, to dispense with his consent for the adoption of his two daughters.[2] We reverse the judge's order and direct that the father be allowed to file the objection.

---

[1]The adoptions of two children, Pearl and Patricia, are involved in this appeal. We employ pseudonyms to protect the privacy interests of the children.

[2]Initially, the department moved to strike the putative father as a party for lack of standing. The father argued that the judge, without justification, denied him standing to file his objection, but as will become apparent from our opinion, the point, as well as the constitutional arguments pertaining thereto, has become moot.

No findings of fact or rulings of law were made by the judge in support of her order, but we can cull from the record the undisputed events which govern our decision.

The parents first came to the attention of the Department of Social Services (department) in December, 1988, through the filing pursuant to G. L. c. 119, § 51A, of a report of suspected child abuse (neglect). The department soon followed by filing a petition which alleged that the younger child was in need of care and protection, G. L. c. 119, § 24; and a District Court judge responded by temporarily removing the younger child from the physical custody of her parents, who were then living together, but not married to one another. In July of 1989, the department filed a similar petition on behalf of the older child and temporary custody was granted to the department.

Nearly two years elapsed before the department — on June 24, 1991 — initiated the instant proceeding in the Probate Court. By this time the parents were living apart and the father had just been released from prison in Utica, New York. A certified, mailed notice of the petition was sent by the department to him addressed to the Utica county jail. The notice contained a deadline of October 28, 1991, for him to object to the allowance of the petition, and alleged that he was the father of the children. A staff person at the jail noted on the letter, "Not Here," and "Return to Sender." It happened that the department sent a copy of the same notice to an attorney who had been appointed to represent the father in the earlier care and protection proceedings. By chance, the attorney, who had not been appointed to represent the father in the parental rights termination matter, had the father's last known address and passed the notice along to him with an explanation of the procedure for filing his objection. A full four days before the return date of the petition, the father responded to the attorney by letter which contained the father's objection. The attorney mistakenly assumed this to be a copy. Unfortunately, the father, being unschooled in such matters, had not forwarded his objection to the court.

It was not until November 12, 1991, fifteen days beyond the return date that counsel realized the father's predicament and filed a motion for leave to file the objection late. At the hearing on the motion, the judge discovered that the father was in "putative" status because his paternity had not been determined in accordance with G. L. c. 209C. She denied his motion. With matters in this troublesome posture, counsel for the father, who had not been appointed by the judge to represent him in the instant proceeding, returned to the Juvenile Court where the father's paternity was adjudicated with respect to both children.

A second futile attempt at filing an appearance in the instant case was made on March 9, 1992, when the same judge who had heard the earlier plea acknowledged the father's standing but summarily denied his motion to file a late objection.[3] This resulted in the father's appeal.

"Sloppiness in following a prescribed procedure . . . is not encouraged or condoned, but at the same time a distinction is taken between serious missteps and relatively innocuous ones." *Schulte* v. *Director of the Div. of Employment Security*, 369 Mass. 74, 79 (1975). We have recognized that "[s]trict interpretation [of notice and consent requirements for adoption] is appropriate to avoid complexity and delay in the adoption process. . . ." *Petition for Revocation of a Judgment for Adoption of a Minor*, 393 Mass. 556, 561-562 (1984). The question here is whether the father's misstep was a case of excusable neglect which, in context, was innocuous because unlikely to introduce complexity or delay in the proceedings. If so, the judge abused her discretion in denying the motion to file a late objection.

In recent years, the problem of determining "excusable neglect" has come up in a series of cases which have established familiar principles to guide a trial judge in making

---

[3]The date of the trial on the petition had been extended due to the department's providing insufficient service to the mother. On February 26, 1992, a copy of the petition was sent to her by certified mail with a return date of May 7, 1992. As of the date of oral argument, the petition to dispense with parental consent to and notice of the children's adoption has not been heard.

these close calls. See *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 430-433 (1979); *Old Colony Bank & Trust Co.* v. *Tacey Transp. Corp.*, 10 Mass. App. Ct. 825, 826 (1980); *Greenleaf* v. *Massachusetts Bay Transp. Authy.*, 22 Mass. App. Ct. 426, 429 (1986) (applying the excusable neglect test to cases involving Mass.R.Civ.P. 60[b], 365 Mass. 828 [1974]).

It should be observed that the pattern of the cited cases equates fairly well with both Mass.R.Civ.P. 6(b), 365 Mass. 747 (1974), and Mass.R.Dom.Rel.P. 6 (b) (1975),[4] which both parties urge us to apply by analogy to the father's situation. See *Care & Protection of Zelda*, 26 Mass. App. Ct. 869, 871 (1989) (analogizing to Mass.R.Civ.P. 24, 365 Mass. 769 [1974], intervention as a matter of right). There are other points of reference available to probate judges in particular, by which to gauge the exercise of their discretion in the resolution of procedural slipups, similar to those which occurred here. See *Adoption of Harriet*, 29 Mass. App. Ct. 111, 112 (1990) (recognizing Uniform Probate Court Practices Xa [1982] which spells out the options available to a probate judge when a party fails to appear at a pretrial conference).

Yet we are cognizant that the case law and the recommended probate practices may not have provided the judge with clear guidance in the situation she met at the time of the hearing. See Uniform Probate Court Practices Xa (5), as amended effective July 1, 1989 (describing the procedure to follow if an objection to the petition to terminate parental consent to adoption is never filed).

---

[4]Rule 6(b) is identical for both sets of rules and reads as follows: "Enlargement. When by these rules or by a notice given thereunder or by order or rule of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order; or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

Returning to the facts of the present case, the mistake ascribed to the father, namely, sending his objection to counsel, rather than the court, is quite different from "that conventionally considered serious." *Schulte*, 369 Mass. at 81. Here, the blame for the late filing is more attributable to the department and the father's attorney, rather than to the father himself. The father did not receive actual[5] notice of this action until his attorney sent him a letter explaining the procedures. Nevertheless, the father responded quickly, and wrote an objection letter which reached his attorney's office a full four days before the return date, thereby making a genuine attempt to make a timely objection to the petition to dispense with the consent to adoption of his two children. Contrast *Adoption of Hanna*, 33 Mass. App. Ct. 542 (1992) (the judge did not err in denying a motion for leave to file a late objection, where a Spanish-speaking mother received in-hand service of the citation 17 days before the return date and waited over one month after that date to file her request).

Here it is apparent that the father's tardy response was the product of confusion and miscommunication rather than neglect or conscious choice. See *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. at 432 (where a confused and inept attempt to have an order as to costs reviewed indicated that the late action was not deliberate). By sending the objection letter to his attorney, the father obviously believed that the attorney continued to represent him and would file the necessary papers to preserve his rights; while the attorney, who was not court appointed for this particular proceeding, assumed that the letter he received was a copy of the one

---

[5]Since the father received actual notice which satisfies due process requirements, *Adoption of Hanna*, 33 Mass. App. Ct. 542, 543 (1992), we are not required to address whether notice was required to be given him as the unadjudicated father. Compare *Matter of J.S.V.*, 402 Mass. 571 (1988) (a putative father has no right to a hearing on the issue of paternity in the context of a G. L. c. 210, § 3, proceeding where the child concerned was conceived and born of a married woman); but see *Caban* v. *Mohammed*, 441 U.S. 380 (1979) (a case where the United States Supreme Court struck down on equal protection grounds a New York statute that permitted the mother, but not the father, of a child born out of wedlock to refuse consent to a child's adoption).

the father sent to the Probate Court. Once the mistake was discovered, the attorney immediately filed a motion to enlarge the time for the objection. Contrast *Old Colony Bank & Trust Co.* v. *Tacey Transp. Corp.*, 10 Mass. App. Ct. at 826 (defense counsel did not file motion for leave to file late answers and counterclaims until more than four months after the return date; and the only excuse mentioned was that the defendants had hoped to resolve the action without a need for trial).

In the instant case, an extension of time for trial would not have been required had the father been allowed to file a late objection. Also, as it turned out, the department would have had ample time to prepare for trial against the father. Service upon the mother had been inadequate; a new notice had to be dispatched to her on February 26, 1992, and the return date was extended to May 7, 1992, almost two months after the father's request to file a late objection.

Finally, the magnitude and consequences of the ruling in this particular case are severe. By her denial of the father's request to file an objection, the judge denied him his day in court. See Uniform Probate Court Practices Xa (5) (the judge will then look at the petition as if the matter were uncontested, but the department still must meet its burden). A decision on the merits of the case might well have resulted in the termination of his fundamental parental rights. See *Santosky* v. *Kramer*, 455 U.S. 745, 753 (1982) (recognizing that proceedings to terminate parental rights require more procedural protections than are required for interventions by the State in other family matters); *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 119 (1984) (dispensing with parental consent to adoption "means that the parent no longer has the power to prevent the termination of these rights, duties and other legal consequences"). In fact, "in mandating heightened [procedural] protections to parents, [the Supreme Court] considered the fact that the state possesses unlimited resources to prove its case, while the parents are often poor, [and] uneducated. . . ." Note, The Termination of Parental Rights by

Massachusetts Courts, 23 New England L. Rev. 547, 554-555 (1988), citing *Santosky*, *supra* at 765. Denying the father his day in court on a petition to dispense with consent for adoption of his children because of mere confusion as to who was to file the objection does little to enhance the public perception of the civil justice system. Cf. *Mullen Lumber Co. v. F.P. Assocs.*, 11 Mass. App. Ct. 1018, 1019 (1981) (stating the same with respect to loss of property); *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 587 (1981) (stating that "the rights to conceive and to raise one's children are . . . far more precious . . . than property rights" [citations omitted]).

As there is no basis for denial of the motion as matter of law, and no significant issue of discretion was or could be presented, we reverse the order of the trial judge and direct that a new order be entered allowing the father's motion to file a late objection.

*So ordered.*