After a trial, a judge of the Juvenile Court found that the child was in need of care and protection. She also found that a man whom we will call the child's putative father was unfit to assume parental responsibility for the child and that her interests were best served by terminating the putative father's parental rights. The judge committed the child to the Department of Children and Families (DCF), finding that DCF's proposed plan for adoption by the child's foster parents served the child's best interests; the judge also declined to order any posttermination visitation between the child and her putative father, leaving the question of possible visits to the prospective adoptive parents.
The putative father now appeals, arguing that the judge erred in terminating parental rights he did not possess because he did not have standing as a putative father. He also claims that, even if he had standing, there was insufficient evidence to establish his unfitness, and he has suffered legal harm as a result of the judge's decision. We agree with his first contention that, as he has not been determined to be the child's father, the Juvenile Court had no jurisdiction to hear this case and terminate parental rights he did not possess. We therefore vacate the decree.
Background. At the time of the child's birth, in February, 2015, the mother was married to a man other than the putative father. The mother's husband is listed as the father on the child's birth certificate, although the child bears the last name of the putative father.[3] However, during the time that this matter was pending, the putative father never established his paternity of the child.
On February 13, 2015, DCF filed with the Juvenile Court a petition for care and protection of the child against the mother and putative father after the child was born prematurely, and tested positive for opioids. In January, 2016, DCF successfully amended its petition to add the legal father, the mother's husband; at that time, the judge declined to grant DCF's request to strike the putative father from the petition. Before the trial, the legal father stipulated for judgment without acknowledging paternity. In addition, also before trial, the mother stipulated to her unfitness, surrendered her parental rights, and entered into an open adoption agreement with DCF.
On October 13, 2016, the trial proceeded only as to the putative father. Although he was present at the start of the trial, he became argumentative, and, after the judge recessed to give him time to speak with his lawyer, he refused to remain in the court room and participate in the trial. At the end of the trial, despite the fact that the putative father had no legal rights to the child, the judge found him to be unfit and "order[ed] the issuance of a decree dispensing with the need for [the putative father's] consent to, or right to any notice of, any adoption, custody, guardianship or any other disposition of the subject child, pursuant to G. L. c. 119, § 26 and G. L. c. 210, § 3."
Discussion. "[A] man is presumed to be the father of a child and must be joined as a party [in any care and protection action] if: (1) he is or has been married to the mother and the child was born during the marriage, or within three hundred days after the marriage was terminated by death, annulment or divorce." G. L. c. 209C, § 6(a )(1), inserted by St. 1986, c. 310, § 16. Where, as here, the mother was married to another person at the time of the child's birth, in order for the putative father to have standing to assert parental rights, he is required to show by clear and convincing evidence that there was a "substantial parent-child relationship," or that he had not yet formed one due to action (or inaction) by the mother. C.C. v. A.B., 406 Mass. 679, 689-690 (1990). The putative father has done neither here.
The putative father makes no argument that the mother thwarted his efforts to have a relationship with the child. In addition, although DCF offered him services as if he were the child's legal father, he failed to maintain contact with DCF, failed to attend scheduled visits with the child, and has taken no responsibility for the child whatsoever. In fact, he has been incarcerated during most of the child's life (including at the time of trial). As noted, there has been no adjudication of paternity, and, given these facts, there would be no basis for one. As a result, the putative father lacks standing to assert legal rights to the child in this case.[4] See Matter of J.S.V., 402 Mass. 571, 575 (1988) ("As a matter of due process, an unmarried, putative father has no absolute due process right to notice, and opportunity to be heard, before the child may be adopted"). Therefore, the court lacked jurisdiction to hear this case and to terminate parental rights the putative father did not possess. For that reason, we vacate the decree.
So ordered.
Vacated.

On the birth certificate, the child's last name is spelled slightly differently than that of the putative father.

Because we reach this conclusion, we find it unnecessary to address the putative father's other arguments.