**Katherine R. WELSH, Petitioner, Respondent,**

v.

**Brian L. JOHNSON, Appellant.**

No. C–9–93–1132.

Court of Appeals of Minnesota.

Nov. 16, 1993.

---

Susan Ginsburg, Duluth, for Katherine R. Welsh.

Thomas W. Strahan, Minneapolis, for Brian L. Johnson.

Considered and decided by LANSING, P.J., and PARKER and NORTON, JJ.

## OPINION

PARKER, Judge.

On February 23, 1993, respondent Katherine Welsh, the executive director of Arrowhead Place Women's Health Center, P.A., in Duluth, filed an affidavit and petition for a harassment restraining order under Minn. Stat. § 609.748 (1992) against appellant Brian Johnson and two other individuals. A temporary restraining order was issued on February 26, 1993. On April 22, 1993, the case was tried to the court. On May 3, 1993, the trial court found Johnson engaged in harassment against Welsh and enjoined Johnson from any further contact with Welsh for the next two years. Johnson appeals the restraining order. We affirm.

## FACTS

Beginning in September 1992, Johnson and others have protested against abortion, performed at Arrowhead Place. Respondent Katherine R. (Tina) Welsh is the executive director of that clinic.

On several occasions soon after the protests began, Welsh would leave her office and Johnson, then unknown to Welsh, would call out to her by name. On one such occasion, Welsh stopped Johnson in the parking lot and expressed her discomfort with his familiarity and asked his name. Although initially reticent, Johnson told Welsh his name and Welsh requested he stop referring to her in the familiar. Welsh said that she felt Johnson invaded her physical space and felt intimidated by his presence. Welsh is 4 feet, 11 inches tall and weighs 100 pounds, while Johnson is 5 feet, 11 inches tall and weighs 210 pounds.

On January 10, 1993, Johnson and others moved the picketing to the street in front of Welsh's residence. As well as carrying signs dealing generally with the abortion issue, the picketers also carried signs portraying Welsh, by name, as a baby killer. The pick-

**214**

ets offended certain of Welsh's neighbors, in front of whose homes the pickets were passing. One neighbor came out and asked the protesters to cease the picketing. The picketers then narrowed the area covered to that directly in front of Welsh's home. Welsh testified she felt threatened and extremely upset.

The next day as Welsh arrived at work, Johnson again said hello to her and told her that he was praying for her. She responded that that was scary and he replied, "Tina, you know why we are here." According to Welsh, she responded, "No, tell me why you are here," and he replied, "To stop the killing, to stop the murdering of the babies." She replied, "If that is true, why are you picketing my home?" At this point another protester, Ralph Ovadal, who was a co-defendant in this case, stepped in and, according to Welsh, said, "Because you are wicked, wicked, wicked, and we are going to expose you, and everyone will know who you are and what you are, and when you are dead and the maggots crawl in and out of your eyes, then you will know the wrath of God." During this exchange, Johnson was present but said nothing. Welsh testified she was quite shaken by the incident and proceeded into the clinic.

Approximately 4:00 p.m. that day, Welsh received a phone call, asking for her personally, and was told it was from "her picketer." Welsh took the call and recognized that it was Johnson. He apologized for Ovadal's behavior and told her, "we are all not like that." Welsh told Johnson she found the apology meaningless and asked him not to call her again.

On February 13, 1993, Johnson again picketed in front of Welsh's home. Welsh was not present at that time, but subsequently learned of the picketing when it appeared on television.

Welsh obtained an ex parte temporary harassment order pursuant to Minn.Stat. § 609.748 (1992) and served it on Johnson and two other individuals. Within an hour or so of being served with a temporary restraining order prohibiting all contact with Welsh, Johnson followed Welsh at a distance of only inches for approximately one block on an isolated alley behind the center.

The harassment case was tried to the court in April 1993. The court concluded that Johnson engaged in "repeated, intrusive and unwanted acts, words and gestures intended to adversely affect the safety, security and privacy of [Welsh]." The court issued a two-year restraining order directing Johnson to cease the harassment. Under its terms, Johnson must keep at least 15 feet away from Welsh, refrain from making any gesture or communication toward her, and cease any surveillance or filming of her. Finally, the court prohibited Johnson from coming any closer than two blocks in any direction from Welsh's residence. Johnson appeals from entry of this order.

### ISSUES

1. Is the application of Minn.Stat. § 609.748 against appellant an unconstitutional deprivation of his First Amendment rights under the United States Constitution, as applied to the facts of this case?

2. Did Johnson engage in harassment sufficient to justify application of the harassment statute?

### DISCUSSION

### I

Johnson challenges the constitutionality of the harassment statute only as applied to the facts of this case and specifically declines to contest its facial constitutionality.

Harassment under the challenged statute consists of "repeated, intrusive, or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another." Minn.Stat. § 609.748, subd. 1 (1992). The statute also provides that if the court finds harassment occurred, it may issue a criminally enforceable restraining order limiting a party's movements, communications and associations as to the harassed party. Johnson claims the order unconstitutionally restricts his freedoms of speech and religion under the First Amendment of the United States Constitution by restricting him from expressing his

views on the issue of abortion. First Amendment rights, however, are not without restrictions. "The First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981). Such rights are subject to reasonable time, place and manner restrictions. *Id.* The time, place, and manner restriction is constitutionally permissible if

> (1) it is justified without reference to the content of the regulated speech; (2) it is narrowly tailored to serve a significant governmental interest; and (3) it leaves open ample alternative channels for communication of the information.

*Goward v. City of Minneapolis*, 456 N.W.2d 460, 464 (Minn.App.1990) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 790, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989)).

■ There appears to be no question that the order is content-neutral. It prohibits Johnson from any communication with Welsh, not just communication regarding his religious or political beliefs. So long as the order serves purposes unrelated to the content of the expression and is justified without reference to the content, it is facially neutral. *Goward*, 456 N.W.2d at 464. We are satisfied the order comports with this test.

Johnson more directly attacks the second prong of the time, place and manner rule, claiming the order is not narrowly tailored to serve a significant government interest. He contends calling someone by her first name, saying "God loves you and so do I," and calling someone on the telephone to apologize does not qualify as involving significant government interests. Also, he claims that engaging in residential picketing, under the circumstances of this case, does not violate a significant governmental interest.

We disagree. In the first place, the fact that this order stems from actions involving Welsh's home is significant. "The state's interest in protecting the well-being, tranquility, and privacy of the home is certainly

of the highest order in a free and civilized society." *Frisby v. Schultz*, 487 U.S. 474, 482, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420 (1988) (quoting *Carey v. Brown*, 447 U.S. 455, 471, 100 S.Ct. 2286, 2296, 65 L.Ed.2d 263 (1980)). *Frisby* also involved residential picketing of an abortion provider's home and noted that the supreme court has consistently "held that individuals are not required to welcome unwanted speech into their homes and that the government may protect this freedom." *Id.*

Likewise, the federal courts have held that when otherwise permissible acts are done with the intent to harass, whether at a home or not, governmental interests in the protection of its citizens are triggered.

> Insofar as appellants' rights of free speech were exercised in close proximity to individual women entering or leaving the clinics so as to tortiously assault or harass them, appellants' rights ended where those women's rights began. There is no constitutional privilege to assault or harass an individual or to invade another's personal space.

*New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1343 (2d Cir.1989).

Johnson also claims the order is not narrowly tailored to meet the state's interest. The court, however, clearly allowed Johnson alternative forums for picketing and expressing his views. He has not shown, or even discussed, how the terms of this specific injunction deny him a forum for his speech. The terms of the order require him to remain at least 15 feet away from the person of Welsh. Under the facts of this case, it appears that Johnson could continue to picket the clinic exactly as he has in the past, the only exception being that he may not personally address Welsh. This restriction does not in any way impede his ability to speak to his beliefs about abortion.

■ Johnson also complains that the restraining order impermissibly prohibits residential public-issue picketing. This issue was also raised in *Frisby*,[1] which involved a municipal ordinance stating:

---

1. Johnson has not notified the Attorney General of a facial constitutional challenge to this statute as required by Minn.R.Civ.App.P. 144 and is therefore limited to arguing the constitutionality

It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the town of Brookfield.

*Frisby*, 487 U.S. at 477, 108 S.Ct. at 2498. The *Frisby* court read the ordinance as restricting its terms to picketing directed at a single residence. This distinction was a key to the *Frisby* court's determination that the ordinance was narrowly tailored.

The type of focused picketing prohibited by the Brookfield ordinance is fundamentally different from more generally directed means of communication that may not be completely banned in residential areas. * * * In such cases "the flow of information [is not] into * * * household[s], but to the public." Here, in contrast, *the picketing is narrowly directed at the household, not the public.* The type of picketers banned by the Brookfield ordinance generally do not seek to send a message to the general public, but to intrude upon the targeted resident, and to do so in an especially offensive way. Moreover, even if some such picketers have a broader communicative purpose, their activity nonetheless inherently and offensively intrudes on residential privacy. The devastating effect of targeted picketing on the quiet enjoyment of the home is beyond doubt.

*Id.* at 486, 108 S.Ct. at 2503 (emphasis supplied).

The question presented in this case is whether the two-block restriction is narrow enough to fit within the *Frisby* admonition that it affect only a household and not "the public." After oral argument of this case, we are satisfied that the restriction is permissible. Although at first blush a two-block restriction may seem possibly excessive in light of the constitutional interests in free speech and exercise of religion, it is clear that the trial judge's knowledge of the configuration of streets in this rather secluded neighborhood rendered the limitation within the court's discretion. We further note that there seem to be only three houses on re-

spondent's block, her own and those of her neighbors on either side.

## II

■ Johnson claims he did not violate the statutory provisions of the harassment law, irrespective of constitutional considerations. Once again, he claims that his activities were not so egregious as to constitute harassment. He claims telling someone "God loves you and so do I" is not susceptible to an interpretation of harassment. Likewise, he notes the telephone call was conciliatory and meant to comfort Welsh.

The record contains ample evidence of harassing behavior. Johnson spoke to Welsh and showed unwelcome and unwarranted familiarity with her when he was, in fact, a stranger. He professed that he and Jesus loved her and personalized his activities by referring to himself as "her picketer." Also, he was present when Ovadal confronted Welsh, and he did nothing to intervene. In fact, by his presence he lent Ovadal support and increased the feeling of threat by Welsh.

■ We reject Johnson's argument that, to constitute harassment, the actions must involve obscenity or vulgarity. The legislature has specifically defined harassment as a broader category of conduct than obscenity directed at another. *See* Minn.Stat. § 609.79 (1992) (criminal sanctions for obscene *or* harassing phone calls). This distinction and the specific absence of any reference to an obscenity requirement in the harassment statute lead us to believe the statute is satisfied by the actions in this case. We believe such behavior can reasonably be understood to "adversely affect the safety, security, or privacy of another." Minn.Stat. § 609.748, subd. 1 (1992). We accordingly affirm the order of the district court.

## DECISION

The restraining order against Johnson, issued pursuant to Minn.Stat. § 609.748, is not an unconstitutional infringement of Johnson's First Amendment rights of speech and free

of the statute on an "as applied" basis. *Markert v. Behm*, 394 N.W.2d 239, 243 (Minn.App.1986). For an analysis of *Frisby* as applied to a facial

challenge of a Minnesota municipal picketing ordinance, *see State v. Castellano*, 506 N.W.2d 641 (Minn.App.1993).

exercise of religion. His actions were within the statutory definition of harassment, and the restraining order was a proper exercise of the district court's discretion.

**Affirmed.**