*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1431**

Vickie Williams and o/b/o M. W., petitioner,
Respondent,

vs.

Phillip A. Rimmer,
Appellant.

**Filed May 26, 2015
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Anoka County District Court
File No. 02-CV-14-4042

Andrew Larson-Wille, Batten & Beasley, PLLC, Roseville, Minnesota (for appellant)

Vickie M. Williams (confidential address) (pro se respondent)

Considered and decided by Schellhas, Presiding Judge; Larkin, Judge; and Minge,

Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

In this appeal from the grant of a harassment restraining order (HRO), appellant

challenges the district court's determination that he engaged in harassment and argues

_____
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

that it is impossible for him to comply with a provision in the HRO that prohibits him from being within a two-block radius of an undisclosed location. Because the district court did not abuse its discretion by granting the HRO, we affirm in part. But we reverse the provision in the HRO that prohibits appellant from being within two blocks of an undisclosed location and remand for a modified HRO consistent with this opinion.

**FACTS**

Appellant Phillip Rimmer was respondent Vickie Williams's landlord from September 2013 until July 2014. The parties had a contentious relationship, and the police were called on multiple occasions by both parties. In October 2013, Williams petitioned for an HRO against Rimmer, which was denied. In July 2014, Williams again petitioned for an HRO against Rimmer, and she included a request for relief on behalf of her 17-year-old daughter, M.W.

The district court held an evidentiary hearing on Williams's petition. Testimony was limited to events that occurred after the first petition was denied. Williams testified that Rimmer appeared at the house that she rented from him without notice on at least six occasions and that while he was there, he cursed at her and acted aggressively and violently. She also testified that Rimmer addressed her and M.W. using racial slurs and derogatory terms. M.W. testified that Rimmer constantly screamed obscenities and was "getting in [their] face[s]" while yelling. She also stated that he threatened to "take [them] to court and wipe [their] a--[es] across the floor."

Although most of the testimony concerned Rimmer's ongoing behavior and general treatment of Williams and M.W., Williams and M.W. testified about two specific

2

verbal altercations. The first incident occurred on July 2, 2014, the day that Williams and M.W. vacated the rental property. M.W. testified that Rimmer yelled at them, got very close to her, and had to be asked more than once to back away. She also testified that Rimmer continued to yell louder and louder as they attempted to leave and that he called Williams "the devil." The second incident occurred on July 7, 2014, the day of a district court hearing regarding Rimmer's eviction action against Williams. Williams testified that after the action was dismissed, Rimmer saw Williams and M.W. in the hallway and screamed obscenities at them. He also yelled "I'm going to get you."

Rimmer testified that the HRO petition was retaliatory because he filed a trespass order against Williams after she vacated the rental property. He also testified that he always gave proper notice before going to the rental property. He denied that he had ever called Williams and M.W. names.

At the conclusion of the hearing, the district court issued an HRO that prohibits Rimmer from (1) harassing Williams and M.W., (2) having direct or indirect contact with Williams and M.W., and (3) being within a two-block radius of Williams's home. The HRO describes Williams's address as "confidential." Rimmer appeals.

## D E C I S I O N

The district court may grant an HRO if "the court finds . . . that there are reasonable grounds to believe that the respondent has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3) (2014). Harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are

3

intended to have a substantial adverse effect on the safety, security, or privacy of another." Minn. Stat. § 609.748, subd. 1(a)(1) (2014).

"An appellate court reviews a district court's grant of a harassment restraining order under an abuse-of-discretion standard." *Kush v. Mathison*, 683 N.W.2d 841, 843 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004). The district court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. To determine if findings are clearly erroneous, this court examines the record to see if "there is reasonable evidence in the record to support the [district] court's findings." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotation omitted). "[T]his court will reverse the issuance of a restraining order if it is not supported by sufficient evidence." *Kush*, 683 N.W.2d at 844.

Rimmer asserts that the district court erred in determining that he engaged in harassment and by excluding him from an area surrounding an undisclosed location. We address each assertion in turn.

**I.**

We first consider Rimmer's challenges to the district court's grant of the HRO. Rimmer contends that the district court erred by determining that he "repeatedly made uninvited visits to [Williams's] home, and that this behavior constituted harassment." Rimmer argues that he and Williams were in a landlord-tenant relationship and that residential landlords may visit their property so long as they attempt to give "reasonable notice." *See* Minn. Stat. § 504B.211, subd. 2 (2014) (stating that a landlord may enter the

4

rented premises "only for a reasonable business purpose and after making a good faith effort to give the residential tenant reasonable notice"). He further argues that unnoticed visits are allowed under certain circumstances. *See* Minn. Stat. § 504B.211, subd. 4(1)-(3) (2014) (listing situations in which a landlord may enter the rented premises without giving prior notice). Rimmer acknowledges that the district court found that he called Williams and M.W. names during his visits, but he argues that this "factual determination does not constitute uninvited visits under the meaning of [the harassment statute]."

The district court credited Williams's testimony that Rimmer made numerous visits to the rental property without notice, but the district court referred to those visits as a "minor issue." The district court went on to say, "more significantly I'm finding that [on] some of these occasions when Mr. Rimmer was at the premises, the leased premises, that he called [Williams and M.W.] names. He called them wh-res, b-tches, n-ggers." Thus, although the district court's form HRO states that "[t]here are reasonable grounds to believe that [Rimmer] has engaged in harassment . . . by . . . [making] uninvited visits," the district court explained that it did not base its harassment determination solely on the uninvited nature of the visits. Instead, the district court based its harassment determination on Rimmer's behavior during the visits. And that determination was not erroneous. *See Kush*, 683 N.W.2d at 844-46 (finding harassment based, in part, on face-to-face confrontations, use of crude and profane language, and use of abusive and profane names).

Rimmer next contends that the district court erred by finding that he threatened to "wipe [Williams's and M.W.'s] a--[es] across the floor." M.W. testified that Rimmer

5

said "he'd take us to court and wipe our a-- across the floor." Rimmer admits that he made the statement, but he argues that the harassment statute requires proof of "objectively unreasonable conduct or intent" on his part and "an objectively reasonable belief on the part of [Williams and M.W.]." *See Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006) (requiring such proof and noting that there must be "reasonable, rather than merely subjective, grounds to believe" harassment has occurred), *review denied* (Minn. Mar. 28, 2006). He argues that his objective intent was clear: he "intended to prevail in a court proceeding, [and] not [to] physically wipe [Williams's and M.W.'s] a--es across a floor."

This court has previously upheld an HRO that was based, in part, on threats to take a party to court. *See Kush*, 683 N.W.2d at 845 (affirming harassment determination based, in part, on the harassing party's threats to take petitioner to court). Moreover, according to M.W.'s testimony, immediately before Rimmer made the statement he was "yelling and screaming at [Williams] and spitting in [Williams's] face and calling her once again b-tches." When considered in its context, the statement that allegedly was meant to convey an intent "to prevail in a court proceeding" was threatening. In sum, there is reasonable evidence in the record to support the district court's finding that Rimmer made the statement, and the district court did not err by basing its harassment determination on the statement. *See id*. at 843 (upholding harassment determination based, in part, on the harassing party's statement to petitioner that "You're going to regret the day you ever bought this f---ing place.").

6

We note that this court will not reverse the grant of an HRO if it is supported by sufficient evidence. *Id*. at 846. Even if we were to ignore the district court's findings regarding Rimmer's conduct during the uninvited visits and Rimmer's statement regarding his intent to prevail in court, the remaining findings establish that Rimmer engaged in harassment.[1] As support for its harassment determination, the district court also found that Rimmer threatened, "I'm going to get you," and engaged in name calling after a court hearing; "got in [M.W.'s] face" while yelling and shouting on another occasion; and called Williams and M.W. "abusive names," such as "n-gger," "b-tch," and "wh-re," "numerous times" from October 2013 to July 2014. Those findings support the district court's determination that Rimmer engaged in harassment. *See id.* at 844-46 (finding harassment in the context of an ongoing dispute between neighbors that included face-to-face confrontations, use of crude and profane language, and use of abusive and profane names).

In conclusion, "[t]he determination of what constitutes an adequate factual basis for [an HRO] is left to the discretion of the district court." *Id.* at 846. We note counsel's statements that appellant is a military veteran and that he suffers from a head injury. We are grateful for Rimmer's service as a veteran and sympathetic regarding his head injury. But his conduct crossed the line. *See id*. ("[T]he harassment laws place carefully limited restraints on individuals whose conduct goes beyond an acceptable expression of outrage

---

[1] Rimmer challenged the remaining findings for the first time at oral argument before this court. Because Rimmer did not raise those challenges in his appellate brief, we do not consider them. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that an issue not briefed on appeal was waived).

and civilized conduct, and instead causes a substantial adverse effect on another's safety, security or privacy."). On this record, the district court did not abuse its discretion by granting an HRO.

**II.**

We next consider Rimmer's challenge to the provision in the HRO that prohibits him from being within a two-block radius of Williams's home, the address of which is described as "confidential" in the HRO.[2] Rimmer's argument on this issue is succinct but persuasive: "On its face, there is no way for [him] to comply with the [HRO]. Without knowing where [he] is ordered to stay away from, [he] risks violating the [HRO] whenever [he] travels anywhere."

The harassment statute authorizes a district court to "issue a restraining order that provides any or all of the following: (1) orders the respondent to cease or avoid the harassment of another person; or (2) orders the respondent to have no contact with another person." Minn. Stat. § 609.748, subd. 5(a)(1)-(2) (2014). Unlike the Domestic Abuse Act, which specifically provides that the district court may "exclude the abusing party from a reasonable area surrounding the [petitioner's] residence," the harassment statute does not explicitly authorize such relief. *Compare* Minn. Stat. § 518B.01, subd. 6(a)(3) (2014) (describing available relief in a domestic abuse case), *with* Minn. Stat. § 609.748, subd. 5(a)(1)-(2) (describing available relief in a harassment case).

---

[2] The record does not explain why Williams's address is described as "confidential" in the HRO. Although Minnesota has an address confidentiality program, Minn. Stat. §§ 5B.01-12 (2014), there is no indication that Williams is a participant in that program. Instead, it appears that Williams simply wrote "confidential address" in all of the HRO forms and documents.

Even though the harassment statute does not explicitly authorize the district court to exclude a harassing party from an area surrounding the petitioner's residence, such a restriction is consistent with an order prohibiting the harassing party from having contact with the petitioner, which is authorized. *See* Minn. Stat. § 609.748, subd. 5(a)(2). Moreover, this court has previously upheld such a restriction. *See Welsh v. Johnson*, 508 N.W.2d 212, 216 (Minn. App. 1993) (concluding, in the context of a First Amendment challenge, that a provision in an HRO that prohibited the harassing party from coming within two blocks of the petitioner's residence was a "permissible" restriction). But we are not aware of any case upholding an HRO provision that excludes a harassing party from an area surrounding an unidentified address. Under the circumstances, we look to the Domestic Abuse Act for guidance. *See Anderson v. Lake*, 536 N.W.2d 909, 911 & n.1 (Minn. App. 1995) (stating that "[the Domestic Abuse Act] and [the harassment statute] are sufficiently similar so that we may recognize caselaw construing the former as applicable to the latter" and finding "the parallels between . . . the two statutes helpful in defining" a term under the harassment statute).

Although an order for protection under the Domestic Abuse Act may exclude an abusing party from "a reasonable area surrounding the [petitioner's] residence," the order must "specifically" describe the area of exclusion. Minn. Stat. § 518B.01, subd. 6(a)(3). We discern no reason why an exclusionary order under the harassment statute should not be subject to the same specificity requirement, especially when a violation of either order exposes the violator to criminal sanctions. *Compare* Minn. Stat. § 518B.01, subd. 14 (2014) (listing criminal penalties for violation of an order for protection), *with* Minn. Stat.

9

§ 609.748, subd. 6 (2014) (listing criminal penalties for violation of an HRO). In addition, a specificity requirement is consistent with a notice provision under the harassment statute that requires an HRO to contain "a conspicuous notice" to the harassing party "of the specific conduct that will constitute a violation of the order." Minn. Stat. § 609.748, subd. 8(a)(1) (2014). The district court's order excluding Rimmer from being within a two-block radius of Williams's home does not satisfy the specificity requirement because Williams's home address is not identified in the order and the record does not indicate that Rimmer knows where Williams resides.

Because the provision in the HRO that prohibits Rimmer from being within a two-block radius of "Petitioner's home at: (confidential address)" is not adequately specific, we reverse in part and remand for the district court to modify the HRO consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**