*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1204**

Cathie J. Pascavage, petitioner,
Respondent,

vs.

Donald Mackay,
Appellant.

**Filed March 7, 2016
Affirmed
Bjorkman, Judge**

Chisago County District Court
File No. 13-CV-15-308

Cathie J. Pascavage, North Branch, Minnesota (pro se respondent)

Donald MacKay, Dassel, Minnesota (pro se appellant)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Bjorkman, Judge.

# U N P U B L I S H E D   O P I N I O N

**BJORKMAN**, Judge

Appellant challenges a harassment restraining order (HRO), arguing that the evidence does not support the HRO and its geographic restrictions are unreasonable. We affirm.

# FACTS

On January 31, 2015, appellant Donald MacKay discovered that his vintage motor vehicle was missing from his property in Dassel. After reporting the apparent theft to law enforcement, MacKay began searching for the vehicle and for the people who took it. During his investigation, MacKay learned that employees of respondent Cathie J. Pascavage's company had been at MacKay's residence to conduct a foreclosure inspection prior to the vehicle's disappearance.[1]

According to Pascavage, on March 31, MacKay traveled to her home in North Branch and entered the gated backyard while she and her children were inside. Pascavage locked the doors because she was frightened by MacKay "roaming around." Pascavage's husband came home while MacKay was at their residence, and had a conversation with him about why he was at their house.

On April 21, MacKay went to Pascavage's place of employment in Vadnais Heights, demanded to speak with her, and pulled her out of a meeting. Pascavage told MacKay that she would provide him with photographs and other information regarding her company's visits to his property, but that she preferred to work through the Meeker County Sheriff's Department. Pascavage asked MacKay to stay away from her home and her family because she had observed MacKay parked in front of her house on several other occasions.

---

[1] The record does not indicate the date when employees of Pascavage's company were at MacKay's residence.

On April 23, Pascavage petitioned for and obtained an ex parte HRO on behalf of herself and her four children. MacKay requested an evidentiary hearing during which both parties testified. Pascavage testified to the facts described above and stated that MacKay had traveled around her community asking several of her acquaintances for information about her.[2] These people included a receptionist at her former place of employment, a colleague in the real estate business, and her mechanic. Pascavage testified that she is afraid of MacKay and does not "know what he's capable of." MacKay generally denied the allegations, but acknowledged talking with Pascavage's husband at their home on March 31 and contacting Pascavage at her office on April 21.

The district court denied the HRO with respect to the children because there was no evidence that MacKay harassed them. But the district court granted the HRO with respect to Pascavage, making the following findings of fact:

> [MacKay] followed, pursued or stalked [Pascavage] as follows: contacted third-parties (mechanic, realtor, co-worker) inquiring [and] making statements [regarding Pascavage].

> [MacKay] made uninvited visits to [Pascavage] as follows: [Pascavage's] home and place of employment.

> . . . .

> The harassment has or is intended to have a substantial adverse effect on [Pascavage's] safety, security, or privacy. The parties have no personal or professional relationship, which substantiates [Pascavage's] testimony regarding her fear of [MacKay].

---

[2] At some point, MacKay accused both Pascavage and her husband of stealing his vehicle.

3

The HRO directs MacKay not to harass or have direct or indirect contact with Pascavage. And it prohibits MacKay from being within one mile of Pascavage's home and one-half mile of her place of employment. MacKay appeals.

## D E C I S I O N

**I.      The district court did not abuse its discretion by granting the HRO.**

A district court may issue an HRO if the court finds that there are reasonable grounds to believe that a person has engaged in harassment. Minn. Stat. § 609.748, subd. 5(b)(3) (2014). "Harassment" is defined as "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect . . . on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target." Minn. Stat. § 609.748, subd. 1(a)(1) (2014); *see Peterson v. Johnson*, 755 N.W.2d 758, 764 (Minn. App. 2008) (explaining that the statute requires proof of objectively unreasonable conduct on the part of the harasser and an objectively reasonable belief on the part of the person subject to the harassment). A single incident of harassment is insufficient to support an HRO. *Roer v. Dunham*, 682 N.W.2d 179, 182 (Minn. App. 2004).

We review the issuance of an HRO for an abuse of discretion. *Witchell v. Witchell*, 606 N.W.2d 730, 731-32 (Minn. App. 2000). A district court's factual findings will not be set aside unless they are clearly erroneous, with due regard being given to the district court's opportunity to evaluate witness credibility. Minn. R. Civ. P. 52.01; *Kush v. Mathison*, 683 N.W.2d 841, 843-44 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004).

4

MacKay argues that the evidence is insufficient to support the issuance of an HRO because he did not have repeated unwanted contact with Pascavage and his conduct did not adversely affect her. We are not persuaded. First, Pascavage testified about multiple unwanted or intrusive acts committed by MacKay. Between March 31 and April 21, Pascavage saw MacKay parked in front of her house on numerous occasions. On April 21, MacKay came uninvited to her office, demanded to speak with her, and pulled her out of a meeting. Pascavage told MacKay to stay away from her. He did not. Immediately after leaving Pascavage's office, MacKay returned to her house. And he approached a neighboring auto mechanic to ask for information about Pascavage's involvement with car thefts.

Second, the evidence shows MacKay's repeated acts substantially affected Pascavage's sense of safety and security. Pascavage testified that she was frightened by MacKay "roaming around" her home and she continues to fear MacKay because she does not know what he is capable of doing. And MacKay's repeated questioning of Pascavage's neighbors and colleagues concerning her possible involvement in the theft of his vehicle have caused Pascavage's concern.[3] While MacKay denies Pascavage's allegations and offered his own version of the events at issue, we defer to the district court's determination of witness credibility. *Kush*, 683 N.W.2d at 843-44.

---

[3] The district court noted that the testimony regarding MacKay's contact with third parties was only admitted to prove the effect on Pascavage. Therefore, this testimony is only relevant in showing that these contacts had a substantial adverse effect on Pascavage.

After carefully reviewing the record, we discern no clear error in the district court's findings of fact. Because sufficient evidence supports the finding that MacKay engaged in multiple instances of unwanted conduct that had a substantial adverse effect on Pascavage, we conclude that the district court did not abuse its discretion by issuing the HRO.

## II.    The geographic restrictions of the HRO are not unreasonable.

When the requirements for issuing an HRO are met, a district court may order an individual not to harass or have contact with the petitioner. Minn. Stat. § 609.748, subd. 5(a)-(b) (2014). Nothing in the HRO statute limits the geographic scope of a no-contact provision. *See* Minn. Stat. § 609.748 (2014).

MacKay argues that the one-mile and one-half-mile restrictions placed around Pascavage's home and place of employment are unreasonable. He does not provide legal support for this assertion,[4] but argues that the restrictions effectively deny him access to the entire city of North Branch. This argument is unavailing. MacKay does not cite any record evidence showing that the restrictions impede his ability to travel in and around North Branch or Vadnais Heights. Nor does MacKay, who resides several hours away in Dassel, explain how any distance restrictions in North Branch or Vadnais Heights unreasonably impede his daily activities.

---

[4] MacKay cites to *Welsh v. Johnson*, 508 N.W.2d 212 (Minn. App. 1993), which is a case that reviewed a restriction in the context of targeted residential picketing. *Welsh* has little relevance to the current appeal. Nevertheless, in that case this court upheld the two-block restriction in the restraining order, noting that the district court's knowledge of the community rendered the limitation within the court's discretion. *Welsh*, 508 N.W.2d at 216.

6

The district court is in the best position to determine what level of restriction is necessary to ensure that Pascavage is safe and secure in North Branch and Vadnais Heights, where she lives and works, respectively. In the absence of any legal support or record evidence that the two geographic restrictions unreasonably restrict MacKay's activities, we discern no abuse of discretion.

**Affirmed.**