NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11797

ADOPTION OF A MINOR.


          Middlesex.     March 2, 2015. - May 7, 2015.

    Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
                    & Hines, JJ.



Adoption, Parent's consent.  Parent and Child, Adoption.  Minor,
     Adoption.  Practice, Civil, Adoption.  Notice.  Consent.
     Words, "Lawful parent."



     Petition filed in the Middlesex Division of the Probate and
Family Court Department on April 25, 2014.

     A motion to proceed without further notice was heard by
Jeffrey A. Abber, J., and a question of law was reported by him
to the Appeals Court.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Patience Crozier for the petitioners.
     Kari Hong, of California, & Mary L. Bonauto & Vickie Henry,
for American Academy of Adoption Attorneys & others, amici
curiae, submitted a brief.


     DUFFLY, J.  The petitioners, J.S. and V.K, a married same-

sex couple, filed a joint petition for adoption in the Probate

and Family Court, seeking to adopt their son Nicholas.[1] Nicholas was born to J.S. in 2014, during the petitioners' marriage. He was conceived through in vitro fertilization (IVF),[2] using a known sperm donor[3] selected by J.S. and V.K., whose names appear on his birth certificate. The petitioners sought to adopt their son as a means of ensuring recognition of their parentage when they travel outside the Commonwealth, or in the event of their relocation to a State where same-sex marriage is not recognized.

The petitioners filed a motion to proceed with the adoption without further notice, arguing that, as Nicholas's lawful parents, they could consent to the adoption, no other consent was necessary, and no notice to any other person was required under G. L. c. 210, § 4. While recognizing the petitioners as Nicholas's legal parents in Massachusetts, a Probate and Family Court judge issued an interlocutory order denying the motion, and reserving and reporting to the Appeals Court the question "whether the lawful parents of a child must give notice to the known biological father/sperm donor pursuant to G. L. c. 210,

---

[1] A pseudonym.

[2] In vitro fertilization (IVF) is "[a] procedure by which an egg is fertilized outside a woman's body and then inserted into the womb for gestation." Black's Law Dictionary 956 (10th ed. 2014). Another form of assisted reproductive technology, artificial insemination, is "[a] process for achieving conception, whereby semen is inserted into a woman's vagina by some means other than intercourse." Id. at 135.

[3] The sperm donor is the brother of V.K.

§ 2," in conjunction with their petition for adoption. We transferred the case to this court on our own motion to consider the correctness of the judge's ruling. See Roberts v. Enterprise Rent-A-Car Co. of Boston, Inc., 438 Mass. 187, 188 & n.4 (2002), citing O'Brien v. Dwight, 363 Mass. 256, 276 (1973).[4] We conclude that G. L. c. 210, § 2, does not require the lawful parents of a child to give notice of the petition for adoption to a known sperm donor, and, accordingly, answer the reported question, "No."

Discussion. Adoption of children in the Commonwealth is governed by G. L. c. 210 (adoption statute). "The law of adoption is purely statutory, Davis v. McGraw, 206 Mass. 294, 297 (1910), and the governing statute, G. L. c. 210[], is to be strictly followed in all its essential particulars. Purinton v. Jamrock, 195 Mass. 187, 197 (1907)." Adoption of Tammy, 416 Mass. 205, 210 (1993). We interpret a statute by looking "first to its language as the 'principal source of insight into legislative intent.'" Adoption of Daisy, 460 Mass. 72, 76 (2011), quoting Water Dep't of Fairhaven v. Department of Envtl.

---

[4] We acknowledge the amicus brief of the American Academy of Adoption Attorneys; American Academy of Assisted Reproductive Technology Attorneys; American Society for Reproductive Medicine; Boston IVF; IVF New England; Lambda Legal Defense and Education Fund, Inc.; Massachusetts LGBTQ Bar Association; National Center for Lesbian Rights; New England Fertility Society; Path2Parenthood; RESOLVE: The National Infertility Association; and RESOLVE New England.

Protection, 455 Mass. 740, 744 (2010). "Where the meaning of the language is plain and unambiguous, we will not look to extrinsic evidence of legislative intent 'unless a literal construction would yield an absurd or unworkable result.'" Adoption of Daisy, supra, quoting Boston Hous. Auth. v. National Conference of Firemen & Oilers, Local 3, 458 Mass. 155, 162 (2010). If the meaning of the statutory language is not plain, we look to "the intent of the Legislature ascertained from all [the statute's] words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." Garney v. Massachusetts Teachers' Retirement Sys., 469 Mass. 384, 388 (2014), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934).

1. Notice requirement. The adoption statute requires the written consent of certain persons before a decree of adoption may issue. Under G. L. c. 210, § 2,

> "[a] decree of adoption shall not be made . . .
> without the written consent of the child to be adopted, if
> above the age of twelve; of the child's spouse, if any; of
> the lawful parents, who may be previous adoptive parents,
> or surviving parent; or of the mother only if the child was
> born out of wedlock and not previously adopted."

The notice requirements for any person whose consent is required under this provision are set forth in G. L. c. 210, § 4.[5]

---

[5] General Laws c. 210, § 4, provides, in part:

By its plain language, G. L. c. 210, § 4, requires notice of a petition for adoption to be given only to those persons from whom written consent to the adoption must be obtained.  See G. L. c. 210, §§ 2, 4.  No notice is required for persons not expressly included in G. L. c. 210, § 2.  See Petition for Revocation of a Judgment for Adoption of a Minor, 393 Mass. 556, 560 (1984).  "The statutory notice provision sets forth who is to be notified," and a person who does not fit into one of the statutory categories "is not entitled to notice."  Id.  Because G. L. c. 210, § 2, does not include the category of "sperm donor" among those from whom consent is required as a prerequisite to adoption, under the plain language of the statute, no notice to a sperm donor is required.  See Adoption of Daisy, supra at 77, quoting Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 126 (2006) ("We do not read into the statute a provision which the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include").

Thus, if the known sperm donor is entitled to notice of the

"If the written consent required by [G. L. c. 210, § 2,] is not submitted to the court with the petition, the court shall, except where the court under [G. L. c. 210, § 3,] has determined that such consent and notice is not required, order notice by personal service upon the parties . . . ."

petitioners' petition for adoption, the only potentially applicable category of persons to whom notice must be given under G. L. c. 210, § 2, is that of "lawful parent." We turn, therefore, to consideration of the category of "lawful parent," as that term is used in the statute, and whether it has any application to the known sperm donor here.

2. Lawful parent. In his reservation and report, the judge stated as an "undisputed fact[]" that J.S. and V.K. are Nicholas's lawful parents. As an initial matter, we agree that, pursuant to G. L. c. 46, § 4B, J.S. and V.K. are Nicholas's lawful parents, and that, as residents of the Commonwealth, they are not required to adopt their son in order to establish their parentage.[6] "[A]ny child born as a result of artificial insemination with spousal consent is considered to be the child of the consenting spouse." Hunter v. Rose, 463 Mass. 488, 493

---

[6] Pursuant to G. L. c. 46, § 4B, "[a]ny child born to a married woman as a result of artificial insemination with the consent of her husband, shall be considered the legitimate child of the mother and such husband." We read this language to mean that, where a married woman is artificially inseminated, and her spouse consents to such insemination, the resulting child is the legal child of both spouses. See Hunter v. Rose, 463 Mass. 488, 492-493 (2012) (recognizing as marital children in Commonwealth two children of same-sex couple, conceived through assistive reproductive technology and born into California domestic partner relationship); Della Corte v. Ramirez, 81 Mass. App. Ct. 906, 907 (2012), citing Goodridge v. Department of Pub. Health, 440 Mass. 309 (2003) ("We do not read 'husband' to exclude same-sex married couples, but determine that same-sex married partners are similarly situated to heterosexual couples in these circumstances"); G. L. c. 4, § 6, Fourth ("words of one gender may be construed to include the other gender and the neuter").

(2012), citing G. L. c. 46, § 4B.  We also understand G. L. c. 46, § 4B, which refers specifically to "artificial insemination," to include parentage of a child born though the use of any assisted reproductive technology.  See Okoli v. Okoli, 81 Mass. App. Ct. 371, 377 (2012) (concluding that G. L. c. 46, § 4B, is applicable to IVF procedures).  Therefore, lawful parentage, and its associated rights and responsibilities, is conferred by statute on the consenting spouse of a married couple whose child is conceived by one woman of the marriage, through the use of assisted reproductive technology consented to by both women.  See G. L. c. 46, § 4B. Because Nicholas was born to J.S., his biological mother, after an IVF procedure to which V.K., her spouse, consented, J.S. and V.K. are his lawful parents.

That conclusion, however, does not address whether, under G. L. c. 210, § 2, a known sperm donor also may be a "lawful parent" for purposes of the notice requirement.  In his reservation and report, the Probate and Family Court judge noted that "the statute does not differentiate between an anonymous sperm donor and a known sperm donor," but stated that he was "not convinced" that "absent a determination by [an appellate] court, . . . the known biological father/sperm donor is precluded from filing a subsequent action to establish his paternity in accordance with G. L. c. 215, § 6."

We have observed previously, in dicta, that, although the adoption statute "does not comment on the [parental] rights and obligations, if any, of the [sperm donor] . . . inferentially he has none."  R.R. v. M.H., 426 Mass. 501, 502, 509-510 (1998) (concluding that surrogacy agreement between plaintiff father, who had donated sperm, and defendant mother, who had agreed to act as surrogate and then changed her mind during pregnancy, was unenforceable).  As to a child of a marriage who is conceived via artificial insemination or IVF, as here, G. L. c. 46, § 4B, by its nature, contemplates that a third party must provide genetic material for the child's conception.  Nonetheless, as is consistent with our paternity statutes and long-standing presumption of the legitimacy of marital children, see D.H. v. R.R., 461 Mass. 756, 760 (2012), and cases cited, G. L. c. 46, § 4B, confers legal parentage only upon the mother's consenting spouse, not the sperm donor.  It is thus presumed that marital children have only two lawful parents:  the biological mother and her spouse.

In certain contexts, however, we have concluded that there are circumstances in which a "putative father"[7] may establish paternity, or claim at least some of the associated rights and obligations of parentage, where the child's mother was married

---

[7] A putative father is an "alleged biological father." Black's Law Dictionary 725 (10th ed. 2014).

9

to someone else at the time of the child's conception.  See

G. L. c. 209C, § 6 (a) (for child born during marriage or within

300 days after termination of marriage, husband is presumed to

be father of child and must be joined in any paternity action).

Where the mother was married when the child was born, a putative

father who is not the mother's spouse may establish paternity in

one of two ways only:  either through a voluntary acknowledgment

of paternity executed by both parents, or through an

adjudication of paternity by a court of competent jurisdiction.

See Smith v. McDonald, 458 Mass. 540, 544 (2010).

A voluntary acknowledgment of paternity requires that the

mother and her spouse sign an affidavit denying that the spouse

is the child's father; the putative father and the mother must

then sign a notarized acknowledgment of parentage stating that

they are the parents of the child.  These documents must be

filed with the court or the registrar of vital records.  See

G. L. c. 209C, § 11 (a); D.H. v. R.R., supra at 761-762.  A

putative father also may file a complaint in equity in the

Probate and Family Court, seeking to establish paternity.  Where

the mother was married to someone else at the time of the

child's birth, a putative father may "establish paternity

[through adjudication] only if he has a substantial relationship

with the child . . . and alleges he is the child's biological

father" (citation omitted).[8]  D.H. v. R.R., supra at 763.  See

C.C. v. A.B., 406 Mass. 679, 691 (1990) (requiring putative

father to demonstrate, by clear and convincing evidence,

"substantial parent-child relationship with the child" in order

_____

[8] A sperm donor, although a genetic parent meeting the definition of a "putative father," "should not be treated as a legal parent."  Kindregan, Collaborative Reproduction and Rethinking Parentage, J. Am. Acad. Matrimonial Lawyers 43, 48 (2008).  The reality today is that families take many different forms, and we recognize that a genetic connection "between parent and child can no longer be the exclusive basis for imposing the rights or duties of parenthood."  Id. at 60.  As commentators suggest, see id. at 47-50, the better view is that a sperm donor may assert parentage only where he donates "sperm for, or consents to, assisted reproduction . . . with the intent to be the parent of [the] child."  Uniform Parentage Act § 703 (2002).  Indeed, the Uniform Parentage Act presumes that a sperm donor is not a parent of a child conceived by means of assisted reproduction.  See Uniform Parentage Act § 702 (2002) (commenting that sperm donor cannot sue to establish parental rights).  In the circumstances here, the sperm donor clearly donated the sperm with the intent that J.S. and V.K be the child's legal parents; a potential change of heart, years hence, would not alter that conclusion.

    Moreover, to bring a claim in equity to establish paternity requires establishing a "substantial parent-child relationship" between the putative father and the child.  See C.C. v. A.B., 406 Mass. 679, 690 (1990).  In the context of assisted reproductive technology, a putative father also may be a biological family member of one of the spouses; the petitioners indicate in their brief that choosing such a donor may allow a nonbiological parent to have a biological tie to the child.  The existence of a relationship such as that of an uncle, cousin, or other family member, however, when coupled with being a sperm donor, does not itself give rise to a "substantial parent-child relationship."  See id. at 689.  Contrast Youmans v. Ramos, 429 Mass. 774, 776, 782 (1999) (characterizing maternal aunt's relationship with child to be "substantial mother-daughter relationship" where aunt was sole caretaker for child; child learned to walk, talk, and read while in aunt's care; aunt oversaw all medical care, schooling, and extracurricular activities; and child referred to aunt as "mom").

for complaint for paternity of child of married mother to "proceed beyond preliminary stages"). Once a putative father successfully establishes his paternity and becomes the legal father of the child, the presumed father, the mother's spouse, logically, then, loses his legal parentage, either by consenting to a voluntary acknowledgment that he is not the child's father, or by a judgment of paternity. See D.H. v. R.R., supra at 761; Smith v. McDonald, supra at 544; C.C. v. A.B., supra at 690-691.

Even if, as the judge contemplated, a known sperm donor could bring an action in accordance with G. L. c. 215, § 6, to establish his paternity, nothing in G. L. c. 210, § 2, reflects any legislative intent that consent to adoption is required of one who may have a theoretical basis to attempt to establish parentage in the future. Indeed, the adoption statute does not require that notice of an adoption of a marital child be given to a putative father whose parental rights have not been determined. See Adoption of a Minor, 338 Mass. 635, 643-644 (1959) (consent of putative father who was not lawful parent at time of adoption was not required). See also G. L. c 210, § 4A (requiring notice to be given only to putative fathers of children born out of wedlock).

In Adoption of Tammy, 416 Mass. 205, 213 n.5 (1993), a case

with facts similar to those here,[9] we noted that the sperm donor provided his written consent to a joint adoption, "[a]lthough not required by the statute."  Here, following the plain and unambiguous language of the adoption statute, see Adoption of Daisy, 460 Mass. 72, 77 (2011), we make explicit the conclusion reached implicitly in Adoption of Tammy, supra.  We will not extend the notice requirements of G. L. c. 210, § 4, beyond the enumerated categories of persons whose consent was required by the Legislature under G. L. c. 210, § 2.  See Adoption of Tammy, supra at 210.

Conclusion.  Because G. L. c. 210, § 2, does not require the lawful parents of a child to give notice of the petition for adoption to a known sperm donor, we answer the reported question, "No."  The order denying the petitioners' motion to proceed with the adoption without further notice is reversed. The matter is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

So ordered.

---

[9] In that case, a same-sex couple decided to have a child, and one spouse conceived through IVF using the sperm of a known donor, who was the cousin of the other spouse.  Adoption of Tammy, 416 Mass. 205, 207 (1993).