ARLENE, ADOPTION OF, 101 Mass. App. Ct. 326

 
 ADOPTION OF ARLENE. [Note 1]

101 Mass. App. Ct. 326
 February 11, 2022 - June 30, 2022

Court Below: Probate and Family Court, Plymouth County Division
Present: Wolohojian, Henry, & Englander, JJ.

 

No. 21-P-286.

Adoption. Due Process of Law, Adoption, Notice. Parent and Child, Adoption. Minor, Adoption, Notice. Notice. Statute, Construction.

This court concluded that the notice and consent framework of the adoption statute, G. L. c. 210, which identifies, in G. L. c. 210, § 4, certain persons who must always be notified upon the filing of a petition for adoption, also requires notice to any person having a due process right to notice under the United States Constitution. [330-333]

In the circumstances of an adoption matter in which the putative father of a child born out of wedlock did not receive notice of the proceedings, and in which the adoption decree entered in Massachusetts while the putative father's petition to establish paternity was pending in Alaska State court, where the mother and child had lived before coming to Massachusetts, this court concluded that the lack of notice and a meaningful opportunity to be heard deprived the putative father of his due process rights under the United States Constitution, given that the record clearly demonstrated that the putative father had a significant custodial, personal, and financial relationship with the child; therefore, this court remanded the matter for the father to be afforded the opportunity to prove his paternity and, if proved, for further proceedings on the merits of the adoption petition. [333-336]

Petition filed in the Plymouth Division of the Probate and Family Court Department on July 11, 2018. 

 The case was heard by Denise L. Meagher, J.

 An application for leave to appeal from the adoption decree was allowed by Elspeth B. Cypher, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

Allison C. Walsh for the father.

Jill MacDonald for the child & others.

 Page 327 

 ENGLANDER, J. The putative father [Note 2] of Arlene (child) appeals from an adoption decree entered by the Probate and Family Court, which granted a petition for adoption filed by the child's mother and the mother's husband (the child's stepfather). The putative father did not receive notice of the adoption proceedings, and the adoption decree entered while the putative father's petition to establish paternity was pending in Alaska State court, where the mother and the child had lived before coming to Massachusetts. The putative father contends, and we agree, that in these circumstances the lack of notice deprived him of his due process rights under the United States Constitution. We therefore remand this matter for the father to be afforded the opportunity to prove his paternity and, if proved, for further proceedings on the merits of the adoption petition. 

 Background. We summarize the findings of the Probate and Family Court judge, supplementing them with undisputed evidence in the record where necessary. The mother and the putative father met online in 2010, and eventually in person in April 2011. When they met, the mother had one child from a prior relationship and was also pregnant with another child. In June 2011, the mother and the putative father began residing together in Florida. In late 2012, the mother learned that she was pregnant with the child and told the putative father, "[W]e are pregnant." During the probable period of the child's conception, the mother and the putative father had engaged in sexual intercourse, and the putative father believed that they were in an exclusive relationship. They informed their families of the pregnancy and agreed that the child would have the putative father's last name. 

 The child was born in April 2013. The putative father was present at the child's birth, but his name was not listed on the child's birth certificate at the mother's request, because the birth certificates of her two other children did not have a father listed. The putative father believed that he would eventually be listed on all three children's birth certificates. The child did, however, have the putative father's surname listed as one of her middle names. Following the child's birth, the putative father continued to live with the mother and the child, provided the child with financial support, took her to doctors' appointments, and did activities with her (including reading books and coloring together). The mother 

 Page 328 

listed the putative father as the child's emergency contact in November 2015. When the child learned to speak, she called the putative father "father" and his parents "grandmother" and "grandfather," respectively. 

 In 2017, when the child was approximately four years old, the parties moved to Alaska. At some point, the putative father's relationship with the mother ended, although the father did see the child a number of times while they were in Alaska. The putative father last saw the child in March 2018; thereafter, the mother did not allow him to visit the child. In April 2018, the mother and the child traveled from Alaska to Massachusetts. At the time the mother left, the putative father believed that the trip was temporary; however, the mother remained in Massachusetts with the child and eventually married her current husband. 

 Within weeks of the mother and the child leaving, on May 11, 2018, the putative father, while still in Alaska, filed a complaint to establish paternity and custody in Alaska Superior Court (Alaska paternity complaint), in which he requested a genetic marker test for the child. In June or July 2018, the father filed a parental responsibility claim form with the Massachusetts Department of Children and Families (DCF) pursuant to G. L. c. 210, § 4A, [Note 3] asserting that he was the child's father, receipt of which DCF confirmed in a letter dated July 30, 2018. 

 Meanwhile, on July 11, 2018, the mother and her husband filed a petition for adoption in the Massachusetts Probate and Family Court, together with a motion for waiver of notice to DCF, which motion was allowed. The petition for adoption was accompanied by an "Affidavit Disclosing Care or Custody Proceedings" (affidavit disclosing other proceedings), signed by the mother's husband on June 27, 2018, which averred that the husband had no knowledge "of other care or custody proceedings involving the [child] in Massachusetts or in any other state or country." Although the affidavit disclosing other proceedings was signed only by the mother's husband, it was accompanied by an "Affidavit of Petitioner for Adoption" that was signed by the mother and listed her as a copetitioner. 

 Page 329 

 On August 14, 2018, the mother and her husband filed a "Motion to Waive Notice" in the Massachusetts adoption proceedings, which argued, among other things, that notice to the putative father was not required under G. L.c. 210, § 4. [Note 4] The motion did not inform the Probate and Family Court of the pending paternity action in Alaska. [Note 5], [Note 6] 

 The motion to waive notice of citation was allowed, and thereafter the adoption decree entered on December 27, 2018, indicating that "notice was waived" because it was a "step parent adoption." The putative father did not receive any notice of the Massachusetts adoption proceedings before the adoption decree entered. It was not until several months later, in March 2019, that the putative father's Alaska counsel was informed by the mother's Alaska counsel (who had been informed by the mother's Massachusetts counsel) of the adoption. [Note 7] Eventually, after further motion practice to obtain the confidential adoption records from the Massachusetts Probate and Family Court, the putative father received a copy of the adoption decree on April 17, 2019. 

 On August 14, 2019, the putative father filed a petition in the Supreme Judicial Court seeking leave to appeal from the adoption 

 Page 330 

decree pursuant to G. L. c. 210, § 11. On December 11, 2019, the Supreme Judicial Court issued an order remanding the matter to the Probate and Family Court for the limited purpose of addressing the statutory prerequisites for appealing under G. L. c. 210, § 11. [Note 8] A judge of the Probate and Family Court then held an evidentiary hearing, at which the putative father came to Massachusetts and testified. The judge found, among other things, that the putative father (1) did not receive notice before the adoption decree entered, (2) did not waive notice, nor was he the subject of a decree dispensing with the need for notice; and (3) did file a notice of appeal within 120 days of receiving actual notice. On March 10, 2021, the Supreme Judicial Court issued an order allowing the putative father to proceed with this appeal. 

 Discussion. The putative father contends that he was deprived of his liberty interest, as the child's father, without due process, because that right was terminated by the adoption decree without notice or a meaningful opportunity to be heard. For the reasons that follow we agree, in light of the particular circumstances of the putative father's parental relationship with the child. Before jumping into the constitutional due process analysis, however, we first need to discuss the notice and consent framework of the Massachusetts adoption statute, G. L. c. 210, as the mother contends, incorrectly in our view, that the putative father was not entitled to notice under that statute. 

 1. Adoption statute. "Adoption of children in the Commonwealth is governed by G. L. c. 210 . . . 'The law of adoption is purely statutory, . . . and the governing statute, G. L. c. 210[], is to be strictly followed in all its essential particulars.'" Adoption of a Minor, 471 Mass. 373, 374 (2015), quoting Adoption of Tammy, 416 Mass. 205, 210 (1993). Two sections of the adoption statute, § 4 and § 4A, address persons required to be notified upon the filing of a petition for adoption. Of these, the important provision for present purposes is § 4, which requires notice to any person listed in G. L. c. 210, § 2, who has not given their consent to the adoption, and which further permits the court to "require 

 Page 331 

additional notice and consent." G. L. c. 210, § 4. [Note 9] 

 The difficulty in this case is that the putative father does not appear to fall into any of the express categories of § 2 of the adoption statute, for which notice is required by § 4. Those categories in § 2 include (1) the child, "if above the age of twelve"; (2) "the child's spouse, if any"; (3) the child's "lawful parents"; and (4) "the mother only if the child was born out of wedlock and not previously adopted." G. L. c. 210, § 2. Of these, the only category the putative father could possibly fit is "lawful parent" -- a term that is not expressly defined in the adoption statute. See G. L. c. 210, §§ 1 et seq.; Adoption of a Minor, 471 Mass. at 376-379. However, with respect to children born out of wedlock, G. L. c. 209C sets forth two methods of establishing legal paternity: a voluntary acknowledgment of parentage executed by both parents (a form unmarried parents complete to list the father on the birth certificate), or a formal adjudication of paternity by a judge. See G. L. c. 209C, §§ 1, 2, 5, 11; Culliton v. Beth Israel Deaconess Med. Ctr., 435 Mass. 285, 289 (2001). See also G. L. c. 209C, § 10 (b) ("Prior to or in the absence of an adjudication or voluntary acknowledgment of paternity, the mother shall have custody of a child born out of wedlock"). Here, because the putative father did not execute a voluntary acknowledgment of parentage with the mother, nor has his paternity been formally adjudicated by a judge, he does not appear to be a "lawful parent" for purposes of G. L. c. 210, § 2. [Note 10] 

 The mother accordingly contends that the father was not entitled to notice under the adoption statute because neither § 4 nor § 4A explicitly requires notice of an adoption proceeding to the putative father of a child born out of wedlock, where the mother 

 Page 332 

has retained her parental rights. [Note 11] The mother relies in particular on dicta from Adoption of a Minor, 471 Mass. at 375, in which the Supreme Judicial Court stated that "G. L. c. 210, § 4, requires notice of a petition for adoption to be given only to those persons from whom written consent to the adoption must be obtained . . . and a person who does not fit into one of the statutory categories is not entitled to notice" (quotation and citation omitted). 

 We do not, however, read § 4 or Adoption of a Minor to state that a person who does not fit into the statutory "categories" is never entitled to notice, even under circumstances where that person is entitled to notice under the United States Constitution. Rather, § 4 identifies certain persons who must always be notified (i.e., persons whose consent is required under § 2, and who have not consented), but it also provides judges with the ability to "require additional notice and consent." This language contemplates, and makes provision for, the potential need for notice to persons not falling squarely within the § 2 categories. See G. L. c. 210, § 4. We note that in Adoption of a Minor, the Supreme Judicial Court was not faced with the issue presented here -- that is, whether a putative father of a child born out of wedlock, who does not fit into one of the statutory categories, nevertheless has a due process right to receive notice of a pending stepparent adoption. Consistent with the general rule that "we assume that the Legislature intends its statutes to pass constitutional muster, and therefore 'we construe statutes to avoid constitutional problems 

 Page 333 

where possible,'" Chapman, petitioner, 482 Mass. 293, 305-306 (2019), quoting Commonwealth v. Maloney, 447 Mass. 577, 589 (2006), we construe G. L. c. 210, § 4, as requiring notice not only to the persons specifically identified in § 2, but also to any person having a due process right to notice under the United States Constitution. See Commonwealth v. Jones, 471 Mass. 138, 143 (2015) ("a statute is to be construed where fairly possible so as to avoid constitutional questions" [citation omitted]); Commonwealth v. Kenney, 449 Mass. 840, 851 (2007), citing Commonwealth v. Lammi, 386 Mass. 299, 301 (1982) (court must presume every enactment of Legislature intended to comply with constitutional constraints). 

 2. Putative father's constitutional right to notice. Against this backdrop, we turn to the question whether the putative father in this case was constitutionally entitled to notice of adoption proceedings that would terminate his parental rights. The interest of parents "in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court.'" Adoption of Patty, 489 Mass. 630, 638 (2022), quoting Care & Protection of M.C., 479 Mass. 246, 256 (2018), S.C., 483 Mass. 444 (2019). "Before parents can be deprived of custody of their child, therefore, the requirements of due process must be satisfied." Adoption of Patty, supra. As bedrock as the above propositions are, however, they beg the question whether, and under what circumstances, a putative father is entitled to notice of adoption proceedings, where (1) the putative father and the mother were never married, (2) the child remains with the mother, and (3) the putative father's paternity has not been legally established, through either an adjudication of paternity or a voluntary acknowledgment of parentage executed by both parents. See G. L. c. 209C, § 2.

 The United States Supreme Court addressed this issue in Lehr v. Robertson, 463 U.S. 248, 262 (1983), and the teaching of Lehr is that whether such a putative father is entitled to notice will depend on the facts -- and in particular, whether the putative father has previously established a "significant custodial, personal, or financial relationship with [the child]." Lehr involved a putative father in New York State who, as here, did not receive notice of a pending stepparent adoption. See id. at 249-250. The putative father was not listed on the birth certificate and his paternity had never been adjudicated. See id. at 251-252. In Lehr, however, the putative father "never had any significant custodial, 

 Page 334 

personal, or financial relationship with [the child], and . . . did not seek to establish a legal tie until after" the adoption proceedings had already commenced. Id. at 262. The Lehr Court ultimately concluded that, under those circumstances, the putative father did not have a constitutional right to notice of the adoption proceedings. See id. at 262-265. 

 But while Lehr held against the putative father's due process rights, the Lehr Court was careful to distinguish the facts before it from a situation where "an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child.'" Lehr, 463 U.S. at 261, quoting Caban v. Mohammed, 441 U.S. 380, 392 (1979). The Court stated that under those circumstances, the father's "interest in personal contact with his child acquires substantial protection under the Due Process Clause." Lehr, supra. The Court characterized this as "grasp[ing]" the "opportunity" to establish a relationship with the child and "accept[ing] some measure of responsibility for the child's future." Id. at 262. Lehr therefore teaches that a putative father who has established such a "significant custodial, personal, or financial relationship" with the child prior to the commencement of the adoption proceedings is entitled to notice, and a meaningful opportunity to be heard, before the child is adopted. [Note 12] Id. 

 Cases decided in the wake of Lehr have construed it as we do -- that is, to require notice to a putative father who has "timely grasped his 'opportunity'" in establishing a relationship with the child. [Note 13] Matter of M.N.M., 605 A.2d 921, 922 (D.C.), cert. denied, 506 U.S. 1014 (1992), quoting Lehr, 463 U.S. at 262. See M.N.M., supra at 927 (putative father "'early on, and continually,' 

 Page 335 

asserted his paternity and the right to assume the obligations of fathering" [citation omitted]). See also Heidbreder v. Carton, 645 N.W.2d 355, 372 (Minn.), cert. denied, 537 U.S. 1046 (2002) (Lehr recognizes putative father's entitlement to due process protection where he can demonstrate "'significant custodial, personal, or financial relationship' with the child" [citation omitted]); F.E. v. G.F.M., 35 Va. App. 648, 663 (2001) ("a biological parent who participates in the rearing of his or her child has a fundamental right to continue to participate in that relationship unless the relationship is altered or terminated by due process of law"). Indeed, the central premise of Lehr has been echoed by this court, insofar as we have said that "parents have a constitutionally protected interest in maintaining a relationship with their children . . . [and] [b]efore that relationship is severed, due process requires that there be notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner'" (emphasis added). Adoption of Hugh, 35 Mass. App. Ct. 346, 347 (1993), quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965). 

 We therefore turn to whether the putative father in this case has established the necessary relationship with the child under the Lehr criteria. We conclude that he has. The record clearly demonstrates that the putative father had a "significant custodial, personal, [and] financial relationship" with the child: he lived with the mother before and after the child's birth; he was present at the child's birth and his surname was included in the child's middle name; the child called him "father" and his parents "grandmother" and "grandfather"; and, for the first four years of the child's life, he lived with the child, provided financial support to the child, took the child to medical appointments, and participated in enrichment activities with the child. He continued to have a relationship with the child until the mother prevented same. Moreover, the father promptly took steps to establish a legal tie to the child, by initiating a paternity action in Alaska before the adoption petition in Massachusetts was filed. See M.N.M., 605 A.2d at 926-927 (putative father "'grasped' his opportunity interest" by asserting his paternity continuously from child's birth and filing paternity action in Missouri before adoption proceedings commenced in District of Columbia). Contrast Lehr, 463 U.S. at 251-252, 263-264 (father failed to register with putative father registry and did not commence paternity action until after adoption proceedings had already commenced). 

 Accordingly, we conclude that the putative father should have received notice, and a meaningful opportunity to be heard, with 

 Page 336 

respect to the petition for adoption filed in Massachusetts. See M.N.M., 605 A.2d at 930. The putative father asks us to vacate the adoption decree in light of the failure to notify; however, before disturbing the decree, the trial court must resolve the question of his paternity. See id. (where putative father's "paternity remains in dispute[,] before anything else takes place, the parties and the trial court must resolve that question"). If the putative father's paternity is legally established, the judge must reopen proceedings on the petition for adoption so that the putative father may participate in the proceedings under G. L. c. 210. [Note 14]

 Conclusion. [Note 15] We remand the case to the Probate and Family Court for further proceedings as follows. The putative father and child must undergo appropriate testing to determine the putative father's paternity. If the putative father is not adjudicated the child's biological father, the adoption decree shall stand. If, however, he is adjudicated the child's biological father, the judge shall (1) reopen proceedings on the petition for adoption; (2) allow the putative father to participate in the G. L. c. 210 proceedings; and (3) make any further orders, including vacating the adoption decree, as the judge deems appropriate. 

So ordered.

FOOTNOTES
[Note 1] A pseudonym. 

[Note 2] "A putative father is an 'alleged biological father.'" Adoption of a Minor, 471 Mass. 373, 377 n.7 (2015), quoting Black's Law Dictionary 725 (10th ed. 2014). 

[Note 3] Pursuant to G. L. c. 210, § 4A, a putative father may file a "parental responsibility claim" with DCF, entitling him (1) to receive notice of either the mother's voluntary surrender of the child, or the involuntary termination of the mother's right to withhold consent to the child's adoption; and (2) to file a petition for adoption or custody of the child, which petition shall be considered by the court "expeditiously" and "without regard to other potential adoptive parents." 

[Note 4] Upon the filing of a petition for adoption, the Probate and Family Court issues a citation ordering service on the persons entitled to notice of the petition. See Adoption of a Minor, 363 Mass. 537, 541 (1973); G. L. c. 210, §§ 4, 4A; Rules 3 and 6 of the Supplemental Rules of the Probate and Family Court (2012). 

[Note 5] There is no finding as to whether the mother, her husband, or both, knew of the putative father's pending Alaska paternity action at the time that they filed the petition for adoption in Massachusetts. The record reflects that, at the very latest, the mother knew of the Alaska paternity action by August 2018, because she retained Alaska counsel who appeared on her behalf at the initial Alaska paternity hearing in August 2018. The mother did not, however, inform the Probate and Family Court of the pending Alaska paternity action once she learned of it, and the affidavit disclosing other proceedings was never amended to reflect the Alaska paternity action. Moreover, although the mother appeared through her Alaska counsel at three hearings on the putative father's paternity complaint between August and October 2018, she did not inform the Alaska court of the Massachusetts adoption proceedings during any of those hearings. 

[Note 6] In the affidavit accompanying the motion to waive notice, the mother averred that the putative father was a "sadist" and a "pedophile," and that he had sexually abused the child and threatened to kidnap her. While we acknowledge the mother's allegations, those allegations do not bear on whether the putative father was entitled to notice of the adoption proceedings. 

[Note 7] The putative father represents in his brief that due to the Massachusetts adoption, the Alaska proceeding was initially stayed, and has since been dismissed. 

[Note 8] "The supreme judicial court may allow a parent, who, upon a petition for adoption, had no notice of the proceedings before the decree and had neither waived notice in accordance with section two nor been the subject of a decree dispensing with need for notice in accordance with section three, to appeal therefrom within one hundred and twenty days after actual notice thereof." G. L. c. 210, § 11. The term "parent" set forth in § 11 is not defined. 

[Note 9] General Laws c. 210, § 4, provides: 

"If the written consent required by section two is not submitted to the court with the petition, the court shall . . . order notice by personal service upon the parties of an order of notice, . . . and the court may require additional notice and consent. But if such child is of unknown parentage and is a foundling, publication as herein set forth shall not be required; but notice of the petition shall be given to the department of children and families." 

[Note 10] We have analyzed the question whether the putative father is a "lawful parent" under Massachusetts law. No party has suggested that a different State's law might apply, or be materially different. Nor does the putative father contend that the court did not have jurisdiction, see G. L. c. 209B, § 2, and we therefore do not consider the matter. 

[Note 11] Section 4A identifies an additional person entitled to notice: a putative father of a child born out of wedlock, but only if (1) he has filed a parental responsibility claim with DCF consistent with the procedure set forth in § 4A, and (2) the mother's parental rights have been terminated, either voluntarily or involuntarily. See G. L. c. 210, § 4A. 

 We do not agree with the putative father's contention that he was entitled to notice under § 4A. By its plain language, § 4A applies "[w]henever the mother of a child born out of wedlock has surrendered the child in accordance with section two, or whenever the right of such mother to withhold consent for adoption has been terminated in accordance with section three." G. L. c. 210, § 4A. Despite this limiting language in the first sentence of § 4A, the father contends that the last sentence of § 4A entitles a putative father to notice of any adoption proceeding (even where the mother's parental rights have not been terminated), if he has filed a parental responsibility claim. We do not agree with the father's overly broad reading of § 4A's last sentence, which merely provides that "[n]o other petition for adoption shall be allowed without proof of compliance with this section." The phrase "compliance with this section" necessarily requires compliance with the entire section, including the limiting language set forth in the first sentence. 

[Note 12] "Seek[ing] to establish a legal tie" is another factor that should be considered. Lehr, 463 U.S. at 262. 

[Note 13] The mother points out that in Matter of J.S.V., 402 Mass. 571, 575 (1988), the Supreme Judicial Court stated that "[a]s a matter of due process, an unmarried, putative father has no absolute due process right to notice, and opportunity to be heard, before the child may be adopted." However, the court also recognized in a footnote that "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood . . . his interest in personal contact with his child acquires substantial protection under the Due Process Clause." Id. at 575 n.6, quoting Lehr, 463 U.S. at 261. Our decision is therefore consistent with the Supreme Judicial Court's opinion in J.S.V. Moreover, this case is factually distinguishable from J.S.V., as in J.S.V. the mother was married at the time of conception, the husband had not denied paternity, and the putative father put forth no offer of proof to overcome the husband's presumption of paternity. See J.S.V., 402 Mass. at 572, 574. 

[Note 14] The putative father has not argued that if he is not adjudicated the biological father of the child, he should be deemed the de facto father of the child. The putative father initially argued that he was the de facto parent of the child's two half-siblings, but later dropped that claim. We accordingly do not address any issues that might arise from a claim of de facto parentage. 

[Note 15] The father's request for appellate fees and costs is denied. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.