NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1012

ADOPTION OF DALLAS.[1]


MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from a Juvenile Court decree terminating his parental rights and from an order denying his motion for a new trial.  He argues that it was a violation of due process for the judge to hold the trial while his complaint to establish paternity was pending, that the evidence did not support terminating his parental rights, and that the Department of Children and Families (department) did not make reasonable efforts to reunify him with the child.  We affirm.

Background.  The child was born in February 2012.  There is no father identified on the child's birth certificate.

In March 2020 the department removed the child from his mother's care and filed a petition alleging that he was in need

_____

[1] A pseudonym.

of care and protection.  At the time of the removal, the department was unaware of the father's whereabouts but eventually located him at Bridgewater State Correctional Facility.  In August 2020 the department amended its petition to add the father as the child's putative father, and counsel was appointed for him.  The father remained incarcerated during the pendency of the proceedings.

The mother died in May 2021.  Thereafter, the department prepared three family action plans for the father, covering the period of July 2021 to April 2023.  The father did not complete any of the action plan tasks and reported that he had not "looked into" any services that might be available to him in prison.  The father also had no visits or contact with the child, at least in part because prison policy did not allow putative fathers to have visits.  In August 2021 the department gave notice of its intent to terminate the father's parental rights.

In April 2022 the father filed a complaint to establish paternity and a motion for genetic marker testing.  The judge allowed the motion in May 2022, but the testing was not completed by the scheduled trial date of January 3, 2023.  On that date the father's counsel informed the judge that the Department of Revenue had not "cooperated with the court's order to give [the father] a paternity test" and suggested that this

2

might raise some "due process issues."[2] In response the judge noted that "the court does have authority to terminate putative parents' rights, especially . . . when it is in the best interest of the child." The judge then proceeded to hear the evidence.

Three witnesses testified at trial -- the ongoing social worker, the adoption social worker, and the father -- and twelve exhibits were admitted in evidence. The judge then issued a decision finding that the father was currently unfit and that the department's plan of adoption by a maternal relative would serve the child's best interests. The judge specifically stated in her decision that it would not be in the child's "best interest to wait for [the father's] paternity to be effectuated" because that would "simply delay[] [the child's] right to permanency."

On January 18, 2023, two weeks after the judge issued her decision, the Department of Revenue completed the genetic marker testing, and the father was determined to be the child's biological father. This prompted the father to move for a new trial, arguing that his due process rights were violated because the department had withheld services and visitation rights from

_____

[2] The record shows that, for some period of time during the COVID-19 pandemic, the Department of Revenue was not entering correctional facilities to administer paternity tests.

him because he had not established paternity.  The judge denied the motion but reopened the evidence to include the adjudication of paternity.  A new decree entered accordingly, from which the father now appeals.

Discussion.  1.  Due process.  The father's principal argument on appeal is that under Adoption of Arlene, 101 Mass. App. Ct. 326 (2022), the judge erred by holding the trial while his complaint to establish paternity was still pending.  The father relies in particular on the following statement from Adoption of Arlene:  "where putative father's 'paternity remains in dispute[,] before anything else takes place, the parties and the trial court must resolve that question.'"  Id. at 336, quoting Matter of M.N.M., 605 A.2d 921, 930 (D.C.), cert. denied, 506 U.S. 1014 (1992).  Based on this statement, the father argues that it was a violation of due process for the judge to terminate his parental rights before adjudicating his paternity.

"Before parents can be deprived of custody of their child, . . . the requirements of due process must be satisfied." Adoption of Arlene, 101 Mass. App. Ct. at 333, quoting Adoption of Patty, 489 Mass. 630, 638 (2022).  "[D]ue process requires that there be notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Adoption of Arlene, supra at 335, quoting Adoption of Hugh, 35 Mass. App.

4

Ct. 346, 347 (1993). The father was afforded all of these rights. Once the department was able to locate him, he was given notice and appointed counsel. He then had the opportunity to participate in the proceedings, including by testifying at trial through video conferencing.

Nonetheless, the father contends that the requirements of due process were not satisfied because he was denied visitation as a result of his paternity not being legally established. According to the father, the denial of visitation deprived him of a meaningful opportunity to be heard because it precluded him from offering rebuttal evidence; he argues that the case should thus be remanded and stayed to allow him time "to gather positive evidence of his parenting skills through visitation." We are unpersuaded. As an initial matter, we note that some of the delay in establishing paternity could be attributed to the father, as he did not file his complaint to establish paternity until April 2022, approximately nineteen months after he was given notice of these proceedings. But even putting this aside, the father cites no authority, and we are aware of none, supporting the proposition that due process requires a judge to delay a termination trial to give a parent the chance to develop favorable evidence. To the contrary, it is well settled that the child's best interests are paramount in these cases, and the child should not be made to wait indefinitely in the hopes that

5

the parent might become fit.[3]  See Adoption of Nancy, 443 Mass. 512, 517 (2005).

Adoption of Arlene does not hold to the contrary.  At issue there was whether a putative father was entitled to notice of a petition for adoption filed in the Probate and Family Court by the child's mother and stepfather.  See Adoption of Arlene, 101 Mass. App. Ct. at 327.  We concluded that the putative father should have received notice, and the lack thereof deprived him of due process, because he had a significant existing relationship with the child and promptly took steps to establish his paternity.  See id. at 335.  We then discussed the remedy for the due process violation.  It was in this context that we said that the question of paternity should be resolved first because the putative father's right to participate in the adoption proceeding was contingent on that question.  See id. at 336.  In other words, as a matter of procedural expediency, it would have been premature to disturb the adoption decree until the putative father's paternity was legally established.  We did not hold, and nothing in our opinion suggests, that a putative

---

[3] As discussed further below, the evidence of the father's unfitness was clear and convincing.  There is no likelihood that visitation would have changed the result, and so the father's due process challenge fails for this additional reason.  See Adoption of Don, 435 Mass. 158, 170 (2001) (showing of prejudice required to obtain reversal on due process grounds).

6

father has a due process right to have his paternity adjudicated before any trial to determine a child's custody takes place.

Here, unlike in Adoption of Arlene, the father received notice of the proceedings, was appointed counsel, and had a meaningful opportunity to be heard.  Due process did not require more.[4]  The judge thus did not err by going forward with the trial despite the pending paternity complaint, or by denying the father's motion for a new trial.

2.  Termination of parental rights.  "In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit and, if the parent is unfit, whether the child's best interests will be served by terminating the legal relation between parent and child."  Adoption of Ilona, 459 Mass. 53, 59 (2011).  "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly

_____

[4] At oral argument the father suggested that the actions of the various governmental actors in this case amounted to a substantive due process violation.  But the father's brief cannot fairly be read to be raising a claim under substantive due process, and so the issue is waived.  See Board of Registration in Med. v. Doe, 457 Mass. 738, 743 n.12 (2010).  Moreover, to establish a substantive due process violation, the father must show that the governmental conduct at issue was "so egregious as to shock the conscience."  Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006).  The record does not reveal any conduct that plausibly rises to this level.

erroneous or where there is a clear error of law or abuse of discretion."  Id.

The uncontested evidence here clearly and convincingly supports the judge's conclusion that the father is unfit.  As the judge found, the father "has not been a part of [the child's] life for many years."  The judge did not credit the father's testimony that he was meaningfully involved with the child prior to being incarcerated.  The child, who was ten years old at the time of trial, has never lived with the father and has expressed no interest in having contact with him.  In addition the father has an extensive criminal record and at the time of trial was serving consecutive prison sentences -- the longest being fourteen to seventeen years -- for offenses he committed in 2013 and 2014.  These offenses included possession of a sawed-off shotgun, possession of a firearm during commission of a felony, and possession of heroin with intent to distribute.  The father was also being treated in prison for mental illness and, within the months leading up to trial, was placed both on psychiatric hold and in solitary confinement.[5]  He

---

[5] The father challenges as clearly erroneous the judge's finding that the father was in solitary confinement at the time of trial.  He correctly notes that his testimony was that he had been in solitary confinement once within the four months leading up to trial.  But this minor error is immaterial to the judge's ultimate conclusion of unfitness.  See Care and Protection of Olga, 57 Mass. App. Ct. 821, 825 (2003).

8

did not look into any services that might be available to him in prison and had no knowledge of the child's significant behavioral and emotional needs.  These facts clearly and convincingly show that the father is unfit.  See Adoption of Nicole, 40 Mass. App. Ct. 259, 261 (1996) (father's unfitness established by evidence that he was serving lengthy prison sentence and had no established relationship with child or realistic plan to provide for her needs).

Furthermore, the judge was within her discretion to conclude that the father's unfitness was not temporary and that terminating his parental rights would serve the child's best interests.  Contrary to the father's argument, the judge did not base that decision solely on the fact of his incarceration. Rather, the judge considered that the father had no existing relationship with the child and that there was no realistic chance that the child could be placed in his care, given that the father was not eligible for parole for another three years and proposed no suitable alternative caretakers.  In these circumstances the judge properly concluded that it would be in the child's "best interest to be adopted and achieve permanency at this critical stage in his development, rather than wait for an indeterminate time to be reunified with an incarcerated parent."  See Adoption of Nicole, 40 Mass. App. Ct. at 261-262 (judge warranted in finding that incarcerated father was not

9

likely to be stable presence in child's life if paroled in two years, and that termination of his rights would therefore be in child's best interests).

To the extent the father argues that the judge should have ordered posttermination and postadoption visits, that issue is waived as it is not supported with adequate discussion or citation to authority.  See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019).  In any event the judge's conclusion that visits would not be in the child's best interests is supported by the evidence, including the uncontested evidence that the child has no relationship with the father and has expressed no interest in contacting him.  See Adoption of Saul, 60 Mass. App. Ct. 546, 556-557 (2004).

3.  Reasonable efforts.  We construe the father's reasonable efforts argument to be that the department generally did not do enough to assess his parenting capabilities or to explore the resources that might be available to him in prison.  This argument is waived, however, because the father did not raise a claim of inadequate services in a timely manner to the judge or to the department.  See Adoption of Daisy, 77 Mass. App. Ct. 768, 781 (2010).  And even putting aside the waiver, the father has not shown error in the judge's findings that the father "was either unwilling or unable to engage in any available classes while incarcerated" and that the department

10

was not obligated to "proactively seek classes or make referrals within the prison system . . . under these particular circumstances."  See id. at 782, quoting Adoption of Serge, 52 Mass. App. Ct. 1, 9 (2001) (department's obligation to make reasonable efforts "contingent upon [parent's] own obligation to fulfill various parental responsibilities, including seeking and utilizing appropriate services").  Finally, even assuming that the department did not fulfill its obligations, remand or reversal would not be the appropriate remedy; "the proper focus of termination proceedings is the welfare of the child." Adoption of Daisy, supra, quoting Adoption of Gregory, 434 Mass. 117, 121 (2001).  As discussed above, the judge properly

determined that the child's best interests would be served by terminating the father's parental rights.

Decree affirmed.

Order denying motion for new trial affirmed.

By the Court (Shin, Grant & Smyth, JJ.[6]),

Clerk

Entered:  August 7, 2024.

---

[6] The panelists are listed in order of seniority.